PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

CRUZ JOAQUIN VISINAIZ,

    Defendant - Appellant.

No. 04-4277

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 03-CR-701-DAK)**

Carlos A. Esqueda, Assistant United States Attorney (and Paul M. Warner, United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Theodore R. Weckel, Salt Lake City, Utah, for Defendant - Appellant.

Before **SEYMOUR**, **EBEL**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Cruz Joaquin Visinaiz ("Visinaiz") appeals from his

conviction and sentence for violation of 18 U.S.C. §§ 1111(a)[1] and 1153(a),[2] for second degree murder by an Indian in Indian Country. He was convicted by a jury and sentenced to 262 months imprisonment and ordered to pay restitution of $107,000. On appeal, Mr. Visinaiz contends that: (1) the evidence was insufficient for second degree murder, (2) the district court's instructions were plain error, (3) the prosecutor's comments during closing argument denied him a fair trial and constituted plain error, (4) the district court's jury selection procedure constituted plain or structural error because it impaired his right to peremptory challenges, (5) the district court abused its discretion on several evidentiary issues, (6) the district court erred in allowing a victim-witness to remain in the courtroom following his testimony; and (7) the district court's determination of facts at sentencing violated United States v. Booker, 125 S. Ct. 738 (2005). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

---

[1]18 U.S.C. § 1111(a) provides, in pertinent part: "Murder is the unlawful killing of a human with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate [a dangerous felony] is murder in the first degree. Any other murder is murder in the second degree."

[2]18 U.S.C. § 1153(a) provides, in pertinent part: "Any Indian who commits against the person or property of another Indian . . . murder, manslaughter . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

<u>Background</u>

On April 15, 2003, the decedent Clara Jenkins ("Jenkins"), was reported missing by her family members. Mr. Visinaiz, her friend, had informed her family members that he was concerned about her well-being as he had not seen her or spoken with her since April 12, 2003, in his home. VII R. Tr. at 446-47. Mr. Visinaiz asked his neighbor Mr. Nephi, Ms. Jenkins' relative, to contact Ms. Jenkins' other relatives, and they filed a missing person report.

Two officers from the Bureau of Indian Affairs ("BIA"), Officer Mountain Lion and Officer Pike-Cuch, arrived at Mr. Visinaiz's residence that same day. Mr. Visinaiz told the officers that he and Ms. Jenkins had been drinking hard alcohol and beer since early on in the day of April 12. Mr. Visinaiz told the officers that he had last seen her around 1:00 the following morning, at which time she had left his residence as a result of an argument over money. VI R. Tr. at 293. The officers were told that Ms. Jenkins had taken a red blanket with her and walked to one of Mr. Visinaiz's neighbors' homes.

Later on the evening of April 15, Mr. Visinaiz was visited by two other law enforcement agents. He told them that he had fought with Ms. Jenkins that night because he would not allow her to drive her vehicle while under the influence. <u>See</u> V R. Tr. at 135-37. One of these officers, Federal Bureau of Investigation ("FBI") Special Agent Wright, found a note on Ms. Jenkins' fence post written by

Mr. Visinaiz, suggesting that Ms. Jenkins had left his house of her own accord. The following day, agents and officers searched the area to the southeast of Mr. Visinaiz's property, recovering a blue air mattress, a faded carpet, and a black plastic tarp below some logs. V R. Tr. at 154-55. Blood was recovered from each item, which was later determined to belong to Ms. Jenkins, and hair strands were found inside the air mattress, which were later determined to belong to Mr. Visinaiz. V R. Tr. at 155-63; VI R. Tr. at 346-48.

On April 17, 2003, a search warrant was executed at Mr. Visinaiz's home; blood and tissue were found on the wall and floor. VI R. Tr. at 317-20. After DNA analysis, these materials were determined to belong to Ms. Jenkins. Id. at 321. On May 4, 2003, Ms. Jenkins' body was discovered in the White River near Mr. Visinaiz's home, weighted down by cinder blocks tied together at Ms. Jenkins' hands and ankles. VI R. Tr. at 324-27. After an autopsy, the medical examiner determined that Ms. Jenkins died from at least four blunt force traumas to the head, causing three skull fractures. Id. at 205-09, 212-13. Ms. Jenkins was approximately 68 years old, had two surgically repaired knees, was approximately 5 feet tall and weighed around 200 pounds, and often used a walker. See VI R. Tr. at 229-30, 356-67.

Mr. Visinaiz filed a stipulation of facts before trial in the form of two affidavits, the second affidavit and stipulation amended the first in a material way.

- 4 -

XI R. Exs. D-6 & D-7. In the first, filed November 4, 2003, Mr. Visinaiz stated that after an afternoon and evening of drinking in his home, he and Ms. Jenkins began to argue, whereupon she threw an empty 40 ounce bottle of beer at him, striking him in the head. Upon being struck, Mr. Visinaiz stated that he became momentarily dazed, and threw a log from the nearby wood burning stove at a lamp directly behind Ms. Jenkins, in an attempt to scare her. According to the first stipulation and affidavit, though, the log accidentally struck Ms. Jenkins in the head, and she fell to the floor, where she struck her head again and died. In the second stipulation and affidavit, filed July 14, 2004, Mr. Visinaiz stated that after being struck by the empty 40 ounce bottle, he saw Ms. Jenkins cock her arm as if to throw a 12 ounce glass at him, and he approached her and repeatedly struck her head with a log. She thereafter fell to the floor, apparently dead.

Mr. Visinaiz testified that he became afraid and upset, and started worrying about reprisal from the decedent's family because he had run-ins with the decedent's relatives and based on his life experience, reservations "could be fairly dangerous places." VII R. Tr. at 526-27. He stored the dead body of his former friend in a crawl space underneath his home. He then attempted to clean the house, in order to remove evidence. He awoke the next morning, Saturday, and penned the note to Ms. Jenkins, placed it on the fence post, where it was later discovered by Agent Wright. After awaking on Sunday, with the dead body still in

- 5 -

his crawl space, Mr. Visinaiz wrapped Ms. Jenkins' body in the air mattress and tarp, attached the cement blocks to her wrists and ankles, placed her in her van, and drove her body to the White River. He removed the coverings and dumped her body in the water. He later admitted to hiding the coverings under some wood. VII R. Tr. at 622-23.

Discussion

A.    Sufficiency of the Evidence

Mr. Visinaiz argues on appeal that the government did not prove beyond a reasonable doubt that he was guilty of second degree murder. Mr. Visinaiz moved for a judgment of acquittal after the guilty verdict which the district court rejected based upon the manner of the victim's death, specifically multiple blows to the head, and the affirmative steps that Mr. Visinaiz took to cover up his crime, including weighting the victim's body with cement blocks and sinking her in a nearby river. II R. Doc. 255 at 1-2; Fed. R. Crim. P. 29(c).

We review the record for sufficiency of the evidence de novo. United States v. Hamilton, 413 F.3d 1138, 1143 (10th Cir. 2005). In so doing, "we view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." Id. (internal citations and quotations omitted).

In order to convict Mr. Visinaiz of second degree murder in Indian Country under 18 U.S.C. §§ 1111(a), 1153(a), the government is required to prove that he: (1) killed Ms. Jenkins, (2) acted unlawfully, (3) acted with malice, (4) is an Indian, and (5) committed the crime within Indian Country. See 18 U.S.C. §§ 1111(a), 1153(a).[3]

With regard to the first element, we find that the evidence is surely sufficient to support the jury's finding that Mr. Visinaiz killed Ms. Jenkins. Indeed, Mr. Visinaiz himself admitted several times to killing her, as well as to striking her on the head repeatedly. VII R. Tr. at 491, 520-21; V R. Tr. at 143, 147, 149.

With regard to the second element, that Mr. Visinaiz acted unlawfully in killing Ms. Jenkins, the evidence is again sufficient to support the jury's finding that the killing was unlawful; i.e., without excuse or justification. Viewing the evidence in the light most favorable to the government, a jury could find that the government proved that Mr. Visinaiz did not act in self-defense, because he either did not believe, or could not reasonably believe, that he was in imminent danger of death or serious bodily injury, such that it was necessary for him to use force likely to cause the death or serious bodily injury of the victim. The jury could

---

[3]The parties have stipulated that the fourth and fifth elements are met, and Mr. Visinaiz does not appeal either element. See VI Aplt. App. at 348-49.

consider that Ms. Jenkins was 68 years old, was approximately five feet tall and weighed around 200 pounds, had two surgically repaired knees, and often used a walker. See VI R. Tr. at 229-30, 356-57. Ms. Jenkins was severely intoxicated, and had been ingesting prescription sedative medication. Id. at 226-28. Mr. Visinaiz, on the other hand, was 46 years old at the time, is five foot ten inches, and weighed approximately 175 pounds. VI R. Tr. at 261-62. Even assuming Mr. Visinaiz was hit by an empty 40 ounce bottle and suffered a laceration, he struck Ms. Jenkins at least four times in the head with a log. See VII R. Tr. at 491, 520-21.

With regard to the malice element, the evidence is sufficient to support the jury's finding that the killing was committed with the required mens rea. Malice, as defined for purposes of second degree murder, requires either: (1) general intent to kill, or (2) intent to do serious bodily injury; (3) depraved heart recklessness, or (4) a killing in the commission of a felony that is not among those specifically listed in the first degree murder statute. United States v. Serawop, 410 F.3d 656, 663 (10th Cir. 2005) (citing United States v. Pearson, 203 F.3d 1243, 1271 (10th Cir. 2000)).

In this case, Mr. Visinaiz admitted to killing Ms. Jenkins by striking her repeatedly on the head with a log until she died. VII R. Tr. at 491, 520-21; V R. Tr. at 143, 147, 149. The medical examiner's evidence indicated that the

numerous blows to the head struck in a downward direction, and at least one was from behind. VI R. Tr. at 219-20. There was no indication of any defensive wounds on Ms. Jenkins' body. Id. at 221.

Mr. Visinaiz argues that Ms. Jenkins had assaulted him numerous times before, and thus this was simply another instance where he was forced to defend himself, or in the alternative, his justified reaction to adequate provocation while in the heat of passion. But Mr. Visinaiz himself admits that there was evidence "which could have supported a finding of second degree murder." Aplt. Br. at 37. He admitted that he killed the victim, and that he buried her body. VII R. Tr. at 491, 520-21; Aplt. Br. at 37. He further admitted to lying numerous times to the police, and the jury did have evidence of the victim's blood on his walls. Aplt. Br. at 37-38. He further concedes, as he must, that the jury could have discounted his testimony. Id. at 38.

Taking into account the object used, the amount of force used, and the disparity of mobility, age, and strength between Mr. Visinaiz and Ms. Jenkins, the jury had sufficient evidence to find that Mr. Visinaiz acted with the requisite mens rea – malice – to satisfy this element of second degree murder. We also note that a reasonable jury could conclude beyond a reasonable doubt that the government proved the absence of heat of passion, based upon the circumstances of the killing, Mr. Visinaiz's admissions of culpability including concealment, and the calm of

his initial denial. Mr. Visinaiz argues that certain facts other than his testimony render the evidence insufficient including (1) the basis for his fear of reprisal, (2) the circumstances surrounding his change in accounts, and (3) the decedent's propensity for drunkeness and violence. Aplt. Br. at 38-42. None of these items alone or in combination on this record render the evidence insufficient when the evidence is viewed in the light most favorable to the verdict.

B.     Jury Instructions

Mr. Visinaiz argues on appeal that the various aspects of the district court's jury instructions, viewed collectively, constituted plain error. Criminal defendants are entitled to jury instructions upon their theory of defense provided there is evidentiary and legal support. United States v. Lofton, 776 F.2d 918, 919-20 (10th Cir. 1985). Upon the failure to so instruct, we will find reversible error. Id.; see also Bird v. United States, 180 U.S. 356, 362 (1901). Jury instructions are reviewed "to determine whether, as a whole, the instructions correctly state the governing law and provide the jury with an ample understanding of the issues and the applicable standards." United States v. Smith, 413 F.3d 1253, 1273 (10th Cir. 2005) (internal citation and quotations omitted).

Mr. Visinaiz argues that the district court erred in formatting the instructions for second degree murder and the lesser included offenses of voluntary and involuntary manslaughter. Aplt. Br. at 44-45. Mr. Visinaiz also

argues that the district court erred in failing to allow the jury to consider the facts associated with an involuntary manslaughter conviction unless it first determined that he was not guilty of murder or voluntary manslaughter. Id.

Mr. Visinaiz failed to object to these instructions at trial, and with good reason. As we discuss below, the contentions on appeal are patently meritless. When no objection to a jury instruction was made at trial, the adequacy of the instruction is reviewed de novo for plain error. United States v. Marshall, 307 F.3d 1267, 1270 (10th Cir. 2002); Fed. R. Crim. P. 30(d) & 52(b). Thus, Mr. Visinaiz must demonstrate that the jury instruction contains (1) error, (2) that is plain, and (3) that the error affects substantial rights. Smith, 413 F.3d at 1274. If this is shown, we may exercise discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. (internal quotations omitted); see also United States v. Lott, 310 F.3d 1231, 1241-42 (10th Cir. 2002).

1.     Heat of Passion

The clarity of the jury instructions "is essential in a murder case." Lofton, 776 F.2d at 920. This is especially true where the defendant has raised a heat of passion defense. Id. As is well known, the prosecution in a criminal case is required to prove every element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). To obtain a murder conviction, the

- 11 -

prosecution must show that the defendant acted with malice aforethought.  Lofton, 776 F.2d at 920; see also 18 U.S.C. § 1111(a).

The distinction between malice and heat of passion led the Supreme Court to hold that in order to obtain a murder conviction, the prosecution must prove beyond a reasonable doubt the "absence of the heat of passion on sudden provocation when the issue is properly presented."  See Mullaney v. Wilbur, 421 U.S. 684, 704 (1975); see also Lofton, 776 F.2d at 920.  Indeed, the heat of passion defense is directly in opposition to malice, that is, it "serve[s] to negative" malice.  Patterson v. New York, 432 U.S. 197, 207 (1977); see also Serawop, 410 F.3d at 663-64.

Mr. Visinaiz argues that under Lofton, the district court's instructions in this case did not allow him to present his theories of defense.  We find this argument less than colorable, for even assuming that Mr. Visinaiz presented evidence for a heat of passion defense, Jury Instruction 23 quite plainly reads:

> The third element the government must prove beyond a reasonable doubt is that the defendant acted with malice aforethought. . . The defendant has raised the defense that he acted in the heat of passion and not with malice.  Heat of passion includes rage, resentment, anger, terror and fear.  Heat of passion may be produced by fear as well as by rage. *In order to satisfy this element, the government must prove the absence of heat of passion beyond a reasonable doubt, before you may find that the defendant acted with malice*.

II R. Doc. 252, J. Instr. 23 (emphasis supplied).  As such, the district court's instruction clearly required that a jury finding of second degree murder mandated

- 12 -

that the government prove the absence of heat of passion beyond a reasonable doubt.

Mr. Visinaiz also takes issue with the definition of the "heat of passion" instruction contained in the voluntary manslaughter instructions. See II R. Doc. 252, J. Instr. 29. He contends that the instruction should have contained "'cool down' language to distinguish the heat of passion felt by initial provocation, from post-provocation, renewed, angry and aggressive thought." Aplt. Br. at 57. According to Mr. Visinaiz, the absence of the "cool down" language precluded jury consideration of the evidence suggesting heat of passion. This must be rejected – the instruction adequately defined heat of passion as "such a state of passion, or hot blood, or rage, anger, resentment, terror or fear as to indicate the absence of deliberate design to kill or as to cause one to act on impulse without reflection." II R. Doc. 252, J. Instr. 29. Suffice it to say, there is no error in Instructions 23 or 29, plain or otherwise.

Mr. Visinaiz also argues that the district court's instructions and verdict form constituted structural error because they precluded the jury from considering lesser included offenses until the greater offense of second degree murder was considered. This reads too much into Lofton. The problem in Lofton was that the jury was not adequately instructed that the government had to prove the absence of heat of passion in the murder instruction. Lofton, 776 F.2d at 921. Given proper

instructions, it was entirely proper to have the jury consider the second degree murder charge first.

2.     Involuntary Manslaughter

Mr. Visinaiz argues that the district court erred in failing to adequately instruct the jury on the distinction between the malice present in second degree murder and the malice present in involuntary manslaughter.  Once again, we review for plain error.  Smith, 413 F.3d at 1273.

There is a similarity between second degree murder and involuntary manslaughter, insofar as they both involve the unlawful killing of a human being.  See Brown, 287 F.3d at 974; see also United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000).  The difference between these two crimes lies in their respective required mental states for culpability.  See Serawop, 410 F.3d at 666; Brown, 287 F.3d at 974; Wood, 207 F.3d 1222, 1228-29.  Second degree murder requires a showing of malice, whereas involuntary manslaughter requires a showing of gross negligence.  That is to say, both involve unlawful acts, but while second degree murder is that of a "depraved heart and reckless and wanton" or "a gross deviation from a reasonable standard of care," involuntary manslaughter amounts to "gross negligence" or a "wanton or reckless disregard for human life."  Brown, 287 F.3d at 974-75 (internal quotations omitted); see also Wood 207 F.3d at 1228; United States v. Soundingsides, 820 F.2d 1232, 1237 (10th Cir. 1987).  We have

- 14 -

repeatedly held that the "substantive distinction [between these two crimes] is the *severity* of the reckless and wanton behavior." Brown, 287 F.3d at 975 (emphasis supplied).

In this case, after extensive consultation with counsel, the district court responded as follows to a jury question regarding the meaning of intent to kill.

> [S]econd degree murder is a general intent crime requiring malice aforethought, an element that may be established, among other ways, by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that the jury is warranted in inferring that the defendant was aware of the serious risk of death or serious bodily harm.
>
> [I]nvoluntary manslaughter is the unlawful killing of a human being without malice in the commission in an unlawful manner, or without due caution and circumspection of a lawful act which might produce death. The defendant's acts must amount to gross negligence, defined as wanton or reckless disregard for human life, and he must have had either actual knowledge or reason to know that his conduct was a threat to the lives of others.
>
> *The substantive distinction is the severity of the reckless and wanton behavior . . . [second] degree murder* involves reckless and wanton disregard for human life that *is extreme in nature*, while *involuntary manslaughter* involves reckless and wanton disregard that *is not extreme* in nature.
>
> Of course, you need to look at all of the instructions in this case in reaching a verdict.

VIII R. at 759-60 (emphasis supplied). The jury instructions that dealt with involuntary manslaughter, Instructions 33-35, clearly comport with what is required in order "to correctly state the governing law and provide the jury with an

- 15 -

ample understanding of the issues and the applicable standards." Smith, 413 F.3d at 1273 (internal citation and quotations omitted). The court's response was not in error, plain or otherwise. What is particularly troubling about the complaint on appeal about this instruction is that counsel, who made his concerns known to the court and *approved this instruction* after the court incorporated modifications, now contends that this instruction is "particularly egregious" in light of his comments, "undecipherable," vague, violative of due process, and structural error. Such an approach reminds us that all too often items claimed as "plain error" on appeal take on a significance and characterization they never had below. It is also apparent that this is a particularly egregious case of invited error. For while it is clear that Mr. Visinaiz objected to Instruction 36's predecessor, see VII R. at 653, the district court then adopted Mr. Visinaiz's proffered instruction on imperfect self-defense. If there is any error here, a challenge thereto is precluded as invited error. See United States v. Burson, 952 F.2d 1196, 1203 (10th Cir. 1991). But we see no error in the imperfect self-defense instruction and its relationship to involuntary manslaughter. II R. Doc. 252, J. Instr. 36.

3.      Self-Defense

Mr. Visinaiz also argues that the district court did not place his defense theories "squarely before the jury." Aplt. Br. at 48. This argument is also without merit. First, Instruction 36 clearly states that Mr. Visinaiz "has been charged with

second degree murder and has raised the defense of self-defense. If you find that the government has disproved the theory of self-defense beyond a reasonable doubt, you should continue to consider the alternative defense of imperfect self-defense." II R. Doc. 252, J. Instr. 36. The jury was also instructed adequately as to the requirements of the law of self-defense: "[I]t is not required that the defendant be in actual danger or great bodily injury. If he honestly and reasonably believes that he is in apparent imminent danger, that his life . . . is about to be taken or that there is a danger of serious bodily harm, that is sufficient." II R. at 252, J. Instr. 31.

The district court further instructed: "You are reminded that the burden of proof remains at all times on the government . . . [t]hus, before you may convict, you must find beyond a reasonable doubt that the government has satisfied its burden that the defendant did not act in self-defense." Id. Finally, in the event that even *more* indicia of the instruction's validity are required, we note that the court instructed: "Therefore, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict as to murder and the lesser included offenses of voluntary and involuntary manslaughter must be not guilty." Id. We reject the contention that the jury was inadequately presented with Mr. Visinaiz's theories of defense. Further, we strongly suggest that counsel carefully consider the merits of an argument before including it in his brief.

- 17 -

C.    Prosecutor's Comments

Mr. Visinaiz next claims that the prosecutor engaged in misconduct during his closing argument by allegedly (1) advising the jury that the government only needed to prove the defendant's gross negligence, (2) misstating the law for involuntary manslaughter, (3) implying that because Mr. Visinaiz claimed self-defense, imperfect self-defense and voluntary manslaughter were not legal possibilities, and (4) misstating that Mr. Visinaiz's lack of motive was irrelevant to the malice determination.  Aplt. Br. at 61-66.

As Mr. Visinaiz did not object at trial, we review this claim only for plain error.  See United States v. Hernandez-Muniz, 170 F.3d 1007, 1011 (10th Cir. 1999).  Plain error must be so "egregious" as to result in a "miscarriage of justice."  See United States v. Russell, 109 F.3d 1503, 1514 (10th Cir. 1997) (quoting United States v. Young, 470 U.S. 1, 15 (1985)).  We review the prosecutor's comments within the context of the entire case.  Hernandez-Muniz, 170 F.3d at 1011.

The first remark that Mr. Visinaiz argues is reversible error was that the government needed only to prove Mr. Visinaiz's gross negligence for a conviction. Here, the portion of the closing argument apparently relied upon by Mr. Visinaiz is less than persuasive.  The prosecutor did say that gross negligence must be shown for involuntary manslaughter.  Further, he did so in arguing why the jury should

- 18 -

find that Mr. Visinaiz's acted with malice, and that the jury should therefore find him guilty of second degree murder, and not the lesser included offense of involuntary manslaughter. See VIII Tr. at 706-09; 713. As such, there is simply no error with regard to this prosecutorial statement.

Second, Mr. Visinaiz argues that the prosecutor misstated the applicable law of involuntary manslaughter, constituting reversible error. Aplt. Br. at 62. This argument is too without merit. Insofar as the prosecutor can be said to have been "stating the law" at all, his argument that Mr. Visinaiz's actions on the night of the murder do not amount to imperfect self-defense, because there was no threat in the first place, is nowhere near reversible plain error. See VIII Tr. at 714-15.

Mr. Visinaiz next asserts that the prosecutor's argument that the defendant either acted in self-defense or in the heat of passion, and not both, constituted reversible plain error. Aplt. Br. at 62. Of course, the arguments of the prosecutor are simply that, arguments, and not evidence, and the jury was so instructed. II R. 252 J. Instr. 6. Here, the "prosecutor did nothing more than argue to the jury that, on the basis of the government's evidence, the jury should find" that Mr. Visinaiz is only entitled to either the heat of passion defense or self-defense, and not both. See United States v. Gauvin, 173 F.3d 798, 804 (10th Cir. 1999). Therefore, we find no error with regard to the prosecutor's argument here.

Mr. Visinaiz's final argument of misconduct focuses on his allegation that

the prosecutor misled the jury by misstating the law in implying at "closing argument that Mr. Visinaiz's lack of motive was irrelevant to the jury's determination of malice." Aplt. Br. at 64. But the prosecutor never told the jury that motive was irrelevant. On the contrary, he argued that it was the government's evidence of Mr. Visinaiz's *lack of motive* that indicated malice. VIII R. Tr. 737 ("What makes this such a brutal killing is the fact there is no motive, it's chilling. That's what makes it malice, that's what makes it second-degree murder."). As such, there is no error in this prosecutorial statement.

Mr. Visinaiz argues that taken cumulatively, these prosecutorial comments and arguments constitute plain error. See Aplt. Br. at 65. On the contrary, we need not conduct a cumulative error analysis as suggested by Mr. Visinaiz. A cumulative error analysis merely aggregates the individual errors found harmless, and therefore not reversible, and it "analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Gauvin, 173 F.3d at 804; see also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). We have not found any individual error at all, and thus there is simply nothing to aggregate.

D.   Jury Selection

Mr. Visinaiz argues that the district court impaired his right to peremptory challenges by imposing a specific amount of time for striking jurors, by talking

with the potential jury members while the attorneys were conducting the selection process, and for organizing the venire members in a such a way that Mr. Visinaiz and his counsel's ability to view them was obstructed.  Aplt. Br. at 68.

It is well settled that a defendant in a criminal trial enjoys the right to an impartial jury.  See Morgan v. Illinois, 504 U.S. 719, 729 (1992).  That right includes an adequate *voir dire* to identify unqualified jurors.  Sallahdin v. Gibson, 275 F.3d 1211, 1222 (10th Cir. 2002).  The trial court, however, retains latitude in conducting *voir dire*, Mu'Min v. Virginia, 500 U.S. 415, 424 (1991), and there is no constitutional requirement that there be an additional opportunity to make a searching inquiry.  Sallahdin, 275 F.3d at 1223.

Before *voir dire*, the court provided the parties with juror questionnaires that provided specific information on each prospective juror.  V R. Tr. at 33, 37.  The court conducted voir dire exclusively.  V R. Tr. at 28-85.  Apparently, while counsel and court personnel determined the peremptory challenges, the district judge decided to "take advantage of the captive audience" for the ten minutes he expected the process to take.  Id. at 86.  He then discussed federal jurisdiction, the nature and size of his caseload, Utah federal court personnel, his teaching activities, a new federal courthouse and a lawsuit that might involve historic preservation, civil case management and other matters with the jury, all the while asking counsel – at least four times – about their progress.  V R. Tr. 85-99.  While

we might question the wisdom of not excusing the "captive audience" during this process and the unusual practice of having court staff handle the peremptory challenges, see V R. Tr. at 85, we cannot say that the district court procedure prejudiced Mr. Visinaiz's rights.[4] While there may have been several extraneous comments, the court did not make "snide comments." Indeed, the court noted that it was a very serious case, and therefore important that the lawyers and the court conduct the *voir dire* process in the best manner possible, albeit rapidly. Id. at 95. Due to the number of potential jurors (50) and the relatively small space in the courtroom, Mr. Visinaiz's counsel asked certain jurors to stand, and the court accommodated. We find no reversible error here.

E.      Evidentiary Issues

Mr. Visinaiz argues that the district court erred with respect to five specific areas of evidentiary rulings. First, Mr. Visinaiz argues that the court should not have allowed evidence of his previous assault on Ms. Jenkins. Aplt. Br. at 71. Second, he argues that evidence regarding Ms. Jenkins' previous DUI arrests and convictions should have be allowed. Id. at 73. Third, he argues that the district

---

[4] We do note that reliance on law clerks or other court personnel to handle the peremptory challenges with the attorneys is generally considered improper. See Glenn v. Cessna Aircraft Co., 32 F.3d 1462, 1464 (10th Cir. 1994) (stating that the district court's reliance on its law clerks to resolve objections to jury instructions was improper); see also Fed R. Crim. P. 24(b) (outlining the procedure required of the *district court* in empaneling a jury).

court erred in excluding the medical record showing Ms. Jenkins' blood alcohol content ("BAC") on the night she was involved in an automobile accident. Id. at 75-76. Fourth, Mr. Visinaiz argues that the court erred in excluding the expert report of a doctor. Id. at 77-78. Fifth, Mr. Visinaiz argues that the court erred in failing to take judicial notice of another doctor's expert report. Id. at 78-79. We address these arguments in turn.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. United States v. Thomas, 410 F.3d 1235, 1244 (10th Cir. 2005). We will not overturn an evidentiary ruling "absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." United States v. Jenkins, 313 F.3d 549, 559 (10th Cir. 2002).

The district court did not abuse its discretion in allowing the questioning of Mr. Visinaiz regarding the previous assault on Ms. Jenkins. Although the court ruled this evidence admissible on other grounds, the government did not use this evidence in its case in chief. Instead, Mr. Visinaiz opened the door to this issue when he testified that he had never harmed Ms. Jenkins. VII R. Tr. at 643. The government, on cross-examination, sought to impeach his testimony.

The district court also did not abuse its discretion in excluding extrinsic evidence relating to Ms. Jenkins' DUI history or her BAC when she was involved

- 23 -

in an automobile accident sometime earlier. With regard to the DUI history, Mr. Visinaiz sought to offer this evidence to prove that Ms. Jenkins was the first aggressor. Aplt. Br. at 73. Because this would have constituted improper character evidence in the form of specific instances of the victim's conduct, as opposed to permissible reputation or opinion evidence, the district court correctly excluded this evidence because Rule 405 precludes it on direct examination. Fed. R. Evid. 405(a). With regard to the medical report, Mr. Visinaiz sought to introduce this as proof that his fear of Ms. Jenkins was justified. VI R. Tr. at 423. This also constituted specific instances evidence, and thus was likewise properly excluded. Fed. R. Evid. 405.

Finally, the district court did not abuse its discretion in excluding the expert report of Dr. Bonnell or in refusing to take judicial notice of the date of Dr. Herrmann's report. With regard to Dr. Bonnell's report, the court essentially held that it was hearsay because Dr. Bonnell, the author of the report, did not testify. VIII R. Tr. at 667-68. The district court also noted that admitting an expert report without that expert's testimony was highly confusing and prejudicial since no cross examination could occur. Id. With regard to Dr. Herrmann's report, Mr. Visinaiz attempted to convince the court to take judicial notice of the date on which Mr. Visinaiz gave Dr. Herrmann's report to the government – but not until after both parties had rested. Id. at 695-96. The district court correctly denied the

request to take judicial notice for two reasons: (1) the probative value was "minimal to the vanishing point," and even assuming some probative value, it was substantially outweighed by the risk of confusion of the issues; and (2) Mr. Visinaiz waived his right to present this information because the case was about to be submitted to the jury.  Id. at 696-97; see also Fed. R. Evid. 403.  As such, the district court did not abuse its discretion with regard to either report.

F.    Victim in Courtroom

Mr. Visinaiz argues that the district court erred in allowing Ms. Jenkins' son, Johnny Jenkins, to remain in the courtroom for the remainder of the trial after his testimony was complete.  Aplt. Br. at 80-82.  He argues that the district court should not have considered Mr. Jenkins a victim, or at least should have issued a cautionary instruction that Mr. Jenkins was not to discuss his testimony with other witnesses.  Id. at 80-81.  Finally, Mr. Visinaiz argues that these requirements are "implicit" in Federal Rule of Evidence 615.  Id. at 81.

The district court allowed Mr. Jenkins to remain in the courtroom, following his testimony, as a victim under 18 U.S.C. § 3510.  For purposes of that statute, "[n]otwithstanding any statute, rule, or other provision of law, a United States district court shall not order any victim of an offense excluded from the trial . . . ."  18 U.S.C. § 3510(a).  A victim for purposes of this statute includes a person "that has suffered direct physical, *emotional*, or pecuniary harm as a result of the

commission of a crime . . . ." 42 U.S.C. § 10607(e)(2) (emphasis supplied); <u>see also</u> 18 U.S.C. § 3510(c) (noting that the definition of "victim" under § 3510 includes all persons defined under § 503(e)(2) of the Victims' Rights and Restitution Act of 1990, which is codified at 42 U.S.C. § 10607(e)(2)). Thus, Mr. Jenkins was "a person authorized by statute to be present." Fed. R. Evid. 615(4). Finally, there was no request for a cautionary instruction and there was absolutely no suggestion that Mr. Jenkins discussed his testimony with others. Consequently, there was no error and Mr. Visinaiz' arguments are without merit.

G.     <u>Booker/Blakely</u> – Sentencing and Restitution

1.     Sentencing

Mr. Visinaiz argues that, following <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the district court erred in calculating his sentence. Aplt. Br. at 83. Mr. Visinaiz has properly preserved this argument by objecting at sentencing that, under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the district court erroneously took into account judge-found facts in applying a four-level enhancement to his base offense level. IX R. Tr. at 24-25, 45. The district court adopted the PSR's recommendations for two separate two-level enhancement for obstructing justice and a vulnerable victim. <u>Id.</u> at 46. Where a defendant preserves a potential <u>Booker</u> error, we will remand if the error was not harmless, that is, if the error may have affected the defendant's substantial rights. See <u>United States v. Labastida-</u>

Segura, 396 F.3d 1140, 1142-43; Fed. R. Crim. P. 52(a).

There are two types of error under Booker: non-constitutional error and constitutional error. United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). Non-constitutional error derives from the so-called remedial portion of Booker, which severed the statutory provision requiring mandatory application of the Sentencing Guidelines in most cases. Booker, 125 S.Ct. at 764 (severing 18 U.S.C. § 3553(b)(1)). This severance has rendered the Guidelines mainly advisory, although sentencing courts must still consult the Guidelines and the factors of 18 U.S.C. § 3553(a). Id. at 767. Appellate courts will reverse a sentence if it is deemed unreasonable. Id. Constitutional Booker error, on the other hand, occurs in the context of a mandatory sentencing regime when a judge-found fact (other than the fact of a prior conviction) increases a defendant's sentence beyond the maximum authorized by a jury verdict or a guilty plea through the court's application of the mandatory guidelines. Id. at 756.

In this case, because the district court did not consider the guidelines mandatory, there was no Booker error, constitutional or non-constitutional. Despite the fact that the court sentenced Mr. Visinaiz before Booker was decided, the district court apparently divined that the Supreme Court would strike down the mandatory application of the Sentencing Guidelines. IX R. Tr. at 46. At sentencing, the district court acknowledged the Guidelines, but sentenced Mr.

- 27 -

Visinaiz to a discretionary non-mandatory 262 months.  Id. at 46 ("I'm going to . . . impose a sentence in this case of 262 months . . . .  [H]owever, that is not under the Sentencing Guidelines, that's a sentence that I've imposed, having looked at all the relevant factors and made my own decision as to how [the sentence] ought to be imposed in this case.").  Therefore, because the district court did not treat the Sentencing Guidelines as mandatory, there can be no non-constitutional Booker error in Mr. Visinaiz's sentence.  See United States v. Serrano-Dominguez, 406 F.3d 1221, 1222-23 (10th Cir. 2005).  Similarly, although the district court did use judge-found facts to enhance Mr. Visinaiz's base offense level from 33 to 37, see IX R. Tr. at 45-46, he did so under a non-mandatory paradigm.

Therefore, this case does not implicate Booker.  Booker, quite clearly, does not prohibit the district court from making factual findings and applying the enhancements and adjustments to Mr. Visinaiz's sentence as long as it did not view or apply the Guidelines as mandatory.  Booker, 125 S.Ct. at 750 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.");  United States v. Lawrence, 405 F.3d 888, 907 (10th Cir. 2005);  United States v. Rodriguez, 398 F.3d 1291, 1300-01 (11th Cir. 2005).  That is, if the district court sentences the defendant using the Guidelines as advisory, there is

no Sixth Amendment violation. Lawrence, 405 F.3d at 907. That is precisely what the district court did here.

Further, even assuming there was constitutional error, it was harmless. Mr. Visinaiz received a two-level enhancement for obstruction of justice based on his own admissions. See Aplt. Br. at 37-38; VII R. Tr. 541-42 (testimony of Mr. Visinaiz); VII R. Tr. 588-596 (same); V R. Tr. 135-37 (testimony of Special Agent Wright); VI R. Tr. at 321, 324-27 (testimony of Special Agent Cizeck). With regard to the vulnerable victim enhancement, the evidence was overwhelming that this 68 year old, overweight, physically handicapped person was incapable of defending herself against her younger, more fit assailant. See VI R. Tr. at 229-30, 352. Therefore, we are satisfied that there was no constitutional Booker error in either the two-level enhancement for obstruction of justice or the two-level enhancement for a vulnerable victim.

2. Restitution

Mr. Visinaiz argues that the district court's amended restitution award pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A, 3664, of $107,000 is "unreasonable" under Booker. Aplt. Br. at 86. We review the legality of a restitution order de novo. United States v. Wooten, 377 F.3d 1134, 1143 (10th Cir. 2004). Blakely and Booker only apply to judicial fact-finding that increases a criminal punishment in violation of the Sixth Amendment.

Booker, 125 S.Ct. at 755-56; Blakely, 124 S.Ct. 2536. In the Tenth Circuit, restitution is not criminal punishment. See United States v. Nichols, 169 F.3d 1255, 1278 (10th Cir. 1999); see also United States v. Hampshire, 95 F.3d 999, 1006 (10th Cir. 1996); United States v. Arutunoff, 1 F.3d 1112, 1121 (10th Cir. 1993). Despite Mr. Visinaiz's argument to the contrary, to the extent that a panel of this court may have *assumed* that restitution qualified as punishment, that panel did so only in order to make the further determination that the MVRA does not prescribe a statutory maximum, and that therefore Blakely and Booker do not apply to restitution on that ground either. See Wooten, 377 F.3d at 1144-45. As such, Mr. Visinaiz's argument that the restitution award was in error is without merit.

We are aware that this court granted Mr. Visinaiz his requested page limit extension. Further, we certainly recognize that this is an important appeal. But this case provides an excellent example of counsel's need to objectively consider points to be raised on appeal and to eliminate those points that have little or no merit. Simply stated, this is a vital part of an advocate's responsibility to his client as well as to the court, see Fed. R. App. P. 38, and failure to adhere to this responsibility can easily serve to distract attention from and undermine meritorious arguments. See Jones v. Barnes, 463 U.S. 745, 751-53 (1984) ("A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal

mound made up of strong and weak contentions.") (internal citations and quotations omitted).

Mr. Visinaiz's motion to supplement the record is granted.

AFFIRMED.