**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee and
      Cross Appellant,

v.

MARK E. MILLER,

      Defendant-Appellant and
      Cross Appellee.

Nos. 05-3293 and 05-3300
(D.C. No. 04-10133-01-MLB)
(Kansas)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge**, McWILLIAMS**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge

On June 3, 2004, in a one-count indictment filed in the United States District Court

for the District of Kansas, Mark E. Miller (the defendant) was charged with knowingly

possessing on November 12, 2003, approximately 21.37 grams of cocaine base with an

intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The defendant

pled not guilty, and on April 7, 2005, a jury returned a verdict finding the defendant guilty

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

of the crime charged. The matter was then referred to the Probation Department for a Presentence Report (PSR).

The PSR set defendant's base offense level at 28. The PSR recommended no reduction of the base offense level for acceptance of responsibility, since the defendant had at no time admitted responsibility for the crime with which he was charged and convicted. However, the PSR recommended an increase in defendant's base offense level of two levels because a dangerous weapon was possessed by the defendant in connection with the commission of the crime charged and for which he had been convicted. All of which resulted in a total offense level of 30.

The government filed an objection to the PSR, requesting that the defendant's base offense level be raised by two levels because the defendant obstructed justice by committing perjury in his testimony at trial. The defendant also filed an objection to the PSR, asking that the defendant not be given a two level enhancement for the firearm found in the search of the house when the search warrant was executed. At sentencing, the district court refused to make any enhancement of defendant's base offense level of 28. As for the government's request for a two level enhancement for perjury, and the defendant's objection to a two level enhancement for possession of a firearm during the 'commission of the crime charged,' the district court stated that since a jury had not found "perjury" or "possession of a firearm," it, the district court could not, and would not, consider either matter. All of which resulted in an unchanged base offense level of 28, which, when coupled with a criminal history category of IV, resulted in a guideline range

of imprisonment for 110 to 137 months. It was in this setting that the district court sentenced the defendant to imprisonment for 120 months. The defendant appeals, and the government cross-appeals. Background facts will put these appeals in focus.

In November, 2003, one Johnny Sanders, a confidential informant (sometimes referred to as a "cooperating individual"), an admitted cocaine user, was asked by the Wichita Police Department (WPD) to attempt to make a purchase of cocaine at a residence located at 1320 North Erie, in Wichita. The WPD had "used" Sanders as a "cooperating individual" to make "buys" on numerous occasions, and paid him a nominal sum to do so on this occasion. The WPD had received an anonymous complaint that drugs were being sold at that residence and that an AK 47 firearm was inside the residence. In response to that request, Sanders, on November 6, 2003, went to the residence located at 1320 North Erie and knocked at the front door, was told to go to the back door, which he did, and he then purchased a small rock of crack cocaine from an African-American man. Sanders did not know the person who sold him the cocaine, but later, in court, identified the defendant as the person who sold him the cocaine. The following day, November 7, 2003, Sanders made a controlled purchase, i.e., the WPD "monitored" the purchase, by Sanders at the residence at 1320 North Erie from the same person, according to Sanders, who had sold him cocaine on November 6, 2003.

The WPD then obtained a search warrant for 1320 North Erie which was executed on November 12, 2003 at 10:25 p.m. The officers went to the back door of the residence, knocked on the door, announced themselves and demanded entry. Once inside the

- 3 -

residence, the officers found the defendant who had locked himself in a bathroom and his girlfriend, one Toniesha Friday in a bedroom. Both were arrested. In the kitchen the officers found a digital scale, a box of sandwich baggies, a larger baggie containing 21.37 grams of crack cocaine, and a glass beaker which contained cocaine residue. The defendant's fingerprints were later found on the glass beaker. In the living room, the officers found a loaded .25 caliber Raven, ZigZag rolling papers typically used to roll marijuana cigarettes, the burnt end of a marijuana cigar, a marijuana cigarette, a razor blade and a BB gun.

At trial, Ms. Friday testified as a government witness and stated that she was defendant's girlfriend at the time of her arrest, that he was the father of her baby but, that at the time of trial, they were no longer friends. She stated that she did not know whether the defendant was selling drugs, but thought something illegal was going on. She said she saw money being exchanged, saw white powder residue on the kitchen counter, and the scale. On cross-examination, she said she didn't want anything to happen to defendant because he was the father of her child. She said she had not been "threatened" by the police, but that she was informed that she should "tell the truth so she would not go to jail for perjury." She also testified on cross-examination that, on the night of the search, the police said that she might, herself, be charged with possession of the cocaine found in the Erie Street residence if she did not say that it belonged to the defendant.

No. 05-3293

As stated, the defendant has appealed his conviction. Counsel argues that the

- 4 -

evidence is insufficient to support his conviction, and, that the district court erred in denying defendant's motion for a new trial based on newly discovered evidence. Without belaboring the matter, we hold that the evidence is amply sufficient to support defendant's conviction. At the time of the search, the defendant and his girlfriend were the only occupants of the house searched. There had been others in the residence but they had left before the police arrived. The fact that others may well have had access to the residence and had perhaps themselves had been "using" the residence to sell cocaine, does not absolve the defendant. We note that defendant's fingerprints were found on the beaker, and, of course, Sanders, the "confidential informant" and/or "cooperating individual," testified at trial that on two occasions prior to defendant's arrest he had purchased crack cocaine from the defendant at the Erie Street address. The fact that the defendant testified that he was only a cocaine user and denied selling crack cocaine to Sanders, only presented a question of fact which, in effect, has now been decided by the jury.

As indicated, subsequent to trial, the defendant filed a motion for a new trial, contending that after the trial it was first ascertained from defendant's sister and her husband that Ms. Friday had told them that the officers had threatened Ms. Friday that they would "take her baby" if she did not testify against defendant. The district court eventually, though somewhat reluctantly, conducted an evidentiary hearing on the motion for a new trial. At that hearing Ms. Friday testified, as we understand it, that at the time

of the search the WPD never threatened to "take away her baby."[1] In this regard, defendant's sister testified at the hearing that Ms. Friday did tell her after the trial that the officers, had threatened to "take her baby" if she didn't "cooperate." Be that as it may, the district court clearly indicated, and in fact so stated, that in its opinion Ms. Friday's testimony was consistent with her trial testimony and credible, and that the testimony of appellant's sister was not.

In denying the motion for new trial based on newly discovered evidence the district court relied on *United States v. Combs,* 267 F.3d 1167 (10th Cir. 2001). In that case we said that the denial of a motion for new trial based on newly discovered evidence is reviewed under an "abuse of discretion" standard and that such occurs only if the denial of the motion is "arbitrary, capricious, whimsical or manifestly unreasonable." Under the described circumstances, the district court's denial of appellant's motion for new trial is neither arbitrary, capricious, whimsical or manifestly unreasonable.

<u>No. 05-3300</u>

As indicated, the government cross-appeals the sentence imposed by the district court when it refused to even consider the government's request that the defendant's base offense level be raised by two for obstruction of justice because he had committed perjury in his testimony at trial and to raise his base offense level by an additional two

---

[1]At the hearing on the motion for a new trial, Ms. Friday did testify that some time after the execution of the search warrant, the police came to her home searching for the defendant, who had apparently jumped bail. She testified that on that occasion the police told her that if she was "harboring" the defendant she might "lose her baby."

levels based on the firearm found in the house when the search warrant was executed. The district court rejected both, based apparently on its reading of *United States v. Booker*, 543 U.S. 220 (2005) and *Blakely v. Washington,* 542 U.S. 296 (2004)*,* and held that a <u>jury</u> had to make such findings before they could be factored into the calculation of the guideline range. We now hold that the district court erred in rejecting out of hand any consideration by the court of whether defendant had committed perjury when testifying at his trial and whether a firearm was possessed in connection with the offense charged. The defendant was sentenced post-*Booker*, and, of course, we learn from *Booker, inter alia*, that the guidelines are only advisory, and not mandatory. In *Booker*, 543 U.S. at 233, the Supreme Court spoke as follows:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.

Subsequent to *Booker*, we have addressed this matter in *United States v. Lawrence,* 405 F.3d 888, 907-908 (10th Cir. 2005) and *United States v. Visinaiz,* 428 F.3d 1300, 1316 (10th Cir. 2005), which defense counsel states in his brief "hold that the district court may continue to make factual finding as it did pre-*Booker* as long as the Court treats the guideline protocol and numbers as advisory." We agree. However, counsel goes on to state that those cases are "in error." In this regard, this panel, of course, could not overrule *Visinaiz* or *Lawrence. In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). "If a

district court makes a mistake of law in consulting and applying the Guidelines, the mistake would warrant a remand." *United States v. Riccardi*, 405 F.3d 852, 872 (10th Cir. 2005). Because the district court believed it could not find facts and apply either enhancement, this case must be remanded for re-sentencing.

Judgment of conviction affirmed. However, the sentence is vacated and the case is remanded for re-sentencing.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge