**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS MARTIN SAGASTE-CRUZ,

Defendant - Appellant.

No. 05-8071
(D.C. No. 04-CR-152-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Defendant-Appellant Jesus Martin Sagaste-Cruz appeals from his

conviction and sentence following a jury verdict finding him guilty of conspiring

to traffic in methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), and 846.  Mr. Sagaste-Cruz was sentenced to life imprisonment and

a $2,500 fine.  The jury's verdict included a finding that the amount of

methamphetamine exceeded forty-five kilograms.  Mr. Sagaste-Cruz also received

a two-level upward adjustment based on a co-conspirator's possession of a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

firearm during the offense, see United States Sentencing Guidelines § 2D1.1(b)(1) (2004) ("U.S.S.G." or "Guidelines"), and a four-level upward adjustment for an aggravating role in the offense as an organizer or leader. See U.S.S.G. § 3B1.2.

On appeal, Mr. Sagaste-Cruz challenges his sentence, contending that: (1) the district court erred in imposing a life sentence because that sentence was based on erroneous post-trial findings of fact and that his sentence is unreasonable under United States v. Booker, 543 U.S. 220 (2005); (2) the district court plainly erred in allowing the introduction of evidence concerning his prison record, street gangs, evidence of other unrelated drug activity in the area where Mr. Sagaste-Cruz was living, and evidence relating to multiple conspiracies supported by co-conspirator hearsay; (3) the government failed to timely file and serve Mr. Sagaste-Cruz with the required information relating to its pursuit of an enhancement under 21 U.S.C. § 851; (4) Mr. Sagaste-Cruz' trial counsel was ineffective, and he was denied a fair trial; and (5) the district court's jury selection procedure violated his right to a fair trial. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

**Background**

In recounting the evidence, we view the facts in the light most favorable to the verdict. Mr. Sagaste-Cruz and his brother Julio Sagaste-Cruz ("Julio") are Mexican nationals. Mr. Sagaste-Cruz was arrested in September 1996 and

charged with distributing methamphetamine in South Dakota. He was convicted and sentenced to ten years imprisonment. The sentence was commuted, and he was deported to Mexico in July 1998. He illegally reentered the United States a few months later.

In the mid-1990s, Mr. Sagaste-Cruz and Julio operated their methamphetamine distribution operation out of Ogden, Utah. At trial, testimony indicated that while Mr. Sagaste-Cruz was incarcerated, Julio became acquainted with Patricio Pena, and shortly thereafter, in the spring of 1997, Mr. Pena began transporting methamphetamine for Julio from Ogden and selling it in Riverton, Wyoming, where he lived. In 1998, Julio met Brenda Hillian, and she began selling methamphetamine for him in 2001.

Mr. Sagaste-Cruz returned from Mexico in the fall of 1998. Around this time, Mr. Pena introduced Julio to one of his Riverton customers, Vance Gilliam, because he knew that Mr. Gilliam needed to make money. Mr. Gilliam began transporting bulk quantities of methamphetamine from Los Angeles to Ogden for Julio. Mr. Gilliam also began transporting methamphetamine from Ogden to Riverton at the direction of both Mr. Sagaste-Cruz and Julio. Aplt. App. at 454, 462. There was some disagreement between Julio and Mr. Pena, however, and Julio and Mr. Sagaste-Cruz discontinued their dealings with Mr. Pena. Julio married Kristy Kucera, and she began transporting methamphetamine from Ogden to Riverton as well.

In March of 2002, Mike and Sheryl Griebel began selling methamphetamine for Mr. Sagaste-Cruz in Riverton. According to their testimony, Mr. Sagaste-Cruz would either personally deliver the methamphetamine or one of his Riverton distributors would do so. After her husband was arrested and incarcerated for distributing methamphetamine, Mrs. Griebel began selling the methamphetamine she obtained from Mr. Sagaste-Cruz. One of her customers, Shane Pingree, took over her customer base at the request of Mr. Sagaste-Cruz when she was arrested. Lastly, Geraldine Blackburn, a methamphetamine user in Riverton, testified that she witnessed Mr. Sagaste-Cruz conducting drug transactions in her home and ordering her boyfriend Carlos[1] to distribute quantities of methamphetamine and collect payments. Around this same time Ms. Blackburn began selling to various other users in Riverton and on the Wind River Indian Reservation.

According to the Pre-Sentence Report ("PSR"), Mr. Sagaste-Cruz was responsible for more than 61.2 kilograms of methamphetamine. The PSR determined that whether the court utilized 61.2 kilograms, or the 45 kilograms used by the jury, the result would be the same. The PSR recommended that Mr. Sagaste-Cruz receive a two-level upward adjustment because it was reasonably foreseeable to Mr. Sagaste-Cruz that Mr. Gilliam was carrying a firearm while

---

[1]Carlos was later identified as Marcelino Rocha and Juan Carlos Mendoza.

participating in the conspiracy. It also suggested a four-level upward adjustment for Mr. Sagaste-Cruz' supervisory role in the offense. As such, the adjusted offense level was 44, and together with Mr. Sagaste-Cruz' criminal history category of III, the guideline range was life imprisonment.

## Discussion

A.    District Court's Factual Findings

Mr. Sagaste-Cruz first argues that the district court erred in imposing a life sentence because that sentence was based on erroneous post-trial factual findings. He contends that the government was required to prove the upward adjustments under § 2D1.1(b)(1) and 3B1.1(a) to the jury. The government disagrees, contending that the district court's findings were permissible under Booker.

Mr. Sagaste-Cruz argues that, following Booker, the district court erred in calculating his sentence. He has properly preserved this argument by objecting at sentencing that, under Blakely v. Washington, 542 U.S. 296 (2004) and Booker, the district court erroneously took into account judge-found facts in applying a four-level upward adjustment to his base offense level. The district court adopted the PSR's recommendations for the two upward adjustments. Where a defendant preserves a potential Booker error, we will remand unless the error is harmless. See United States v. Labastida-Segura, 396 F.3d 1140, 1142-43 (10th Cir. 2005); Fed. R. Crim. P. 52(a).

- 5 -

There are two types of error under Booker: non-constitutional error and constitutional error. United States v. Visinaiz, 428 F.3d 1300, 1315 (10th Cir. 2005). Non-constitutional error derives from the so-called remedial portion of Booker, which severed the statutory provision requiring mandatory application of the Guidelines in most cases. Booker, 543 U.S. at 258-59 (severing 18 U.S.C. § 3553(b)(1)). This severance has rendered the Guidelines advisory, although sentencing courts must still consult the Guidelines and the factors of 18 U.S.C. § 3553(a). Id. at 264. Appellate courts will reverse a sentence if it is deemed unreasonable. Id.; see also United States v. Sanders, --- F.3d ----, 2006 WL 1376962, at *3 (10th Cir. May 16, 2006) (explaining that a sentence may be unreasonable based upon its length or the method in which it was calculated). Constitutional Booker error, on the other hand, occurs in the context of a mandatory sentencing regime when a judge-found fact (other than the fact of a prior conviction) increases a defendant's sentence beyond the maximum authorized by a jury verdict or a guilty plea through the court's application of the mandatory guidelines. Booker, 543 U.S. at 244.

In this case, because the district court did not consider the guidelines mandatory, there was no Booker error, constitutional or non-constitutional. At sentencing, the district court acknowledged the Guidelines, but exercised its discretion and sentenced Mr. Sagaste-Cruz to a life sentence. Therefore, because the district court did not treat the Guidelines as mandatory, there can be no

- 6 -

non-constitutional <u>Booker</u> error in Mr. Sagaste-Cruz' sentence. See <u>Visinaiz</u>, 428 F.3d at 1316. <u>Booker</u> is perfectly pellucid insofar as it does not prohibit the district court from making factual findings and applying various adjustments to a defendant as long as it did not view or apply the Guidelines as mandatory. <u>Booker</u>, 543 U.S. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment."). Of course, the district court must consider the guidelines in fashioning a sentence. <u>United States v. Kristl</u>, 437 F.3d 1050, 1053 (10th Cir. 2006)

To the extent that Mr. Sagaste-Cruz is arguing error in the district court's application of the Guidelines to include the two-level upward adjustment based on his co-conspirator's possession of a gun, we disagree. We review a district court's legal application of the guidelines post-<u>Booker</u> de novo, and its supporting findings of fact for clear error. <u>Kristl</u>, 437 F.3d at 1054. The district court considered testimony from both the co-conspirator himself and law enforcement officials, as well as the government's proffer at sentencing. It is axiomatic that the government bears the initial burden to prove possession of the weapon by a preponderance of the evidence. See <u>United States v. Smith</u>, 131 F.3d 1392, 1400 (10th Cir. 1997). Yet it is likewise axiomatic that in a conspiracy case the government need not prove that the defendant himself possessed the firearm. See

id.

Accordingly, the district court can attribute to a defendant the possession of firearms by a co-conspirator if that possession was known or reasonably foreseeable to that defendant. Id. Once the government meets this standard, it is incumbent upon the defendant to show that it is "clearly improbable" that the weapon was connected to the offense. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999). We conclude that while the government has more than met its burden in this case, Mr. Sagaste-Cruz has failed to show that it is "clearly improbable" that Mr. Gilliam's possession of a handgun while traveling in his vehicle with methamphetamine was connected to their ongoing conspiracy.

As an initial matter, it is true that Mr. Gilliam indicated in his testimony that he initially and primarily dealt with Julio. Nevertheless, his testimony also quite starkly paints a picture revealing Mr. Sagaste-Cruz as extensively involved in the conspiracy as well, particularly insofar as Mr. Gilliam unambiguously testified that when Julio was away he dealt with Mr. Sagaste-Cruz. Aplt. App. at 444. Mr. Gilliam was also forthcoming regarding his arrest for distributing methamphetamine and admitted that his sentence reflected that he possessed a firearm. Id. at 438. Furthermore, the government presented evidence of this arrest by the arresting law enforcement officers. Id. 472-86. Lastly, the PSR clearly reinforces Mr. Gilliam's admission here, because it provided the district court with the information pertaining to his two-count conviction — one for

conspiracy to possess with intent to distribute methamphetamine and the other for carrying/use of a firearm in relation to a drug trafficking crime.  Id. at 846.

Indeed, it hardly strains judicial credulity to think that Mr. Sagaste-Cruz knew or could foresee that Mr. Gilliam was carrying a weapon.  To the contrary, it is quite common for drug dealers to carry weapons to protect their merchandise, their cash receipts, and to intimidate potential purchasers.  See United States v. Becker, 230 F.3d 1224, 1231 (10th Cir. 2000); see also United States v. Nicholson, 983 F.2d 983, 990 (10th Cir. 1993).  As for Mr. Sagaste-Cruz' contention that there was never any explicit testimony by Mr. Gilliam or the law enforcement officers that Mr. Gilliam possessed a firearm at the time of his arrest, we are afraid that such an argument simply proves too much.  As elaborated above, there was more than ample evidence for the district court to apply this enhancement, and we find no error in the district court's decision to attribute the possession of the gun to Mr. Sagaste-Cruz.

With regard to the supervisor/leader upward adjustment, the district court must find, by a preponderance of the evidence, that: (1) at least five persons were involved or participated in the criminal venture; and (2) that the defendant either exercised leadership control or supervision over at least one other participant, or that the defendant functioned as an organizer of the criminal activity, even if he did not directly supervise or control any specific subordinates.  See United States v. Cruz-Camacho, 137 F.3d 1220, 1224 (10th Cir. 1998); United States v. Valdez-

Arieta, 127 F.3d 1267, 1270-72 (10th Cir. 1997).  In order to qualify as a supervisor or leader, Mr. Sagaste-Cruz need only have supervised one subordinate in the conspiracy.  United States v. Apperson, 441 F.3d 1162, 1211 (10th Cir. 2006).  The district court is also entitled to take into account all relevant conduct.

Once again, we find no error in the district court's determination.  The government's evidence clearly showed that Mr. Sagaste-Cruz and his brother Julio recruited, supervised, and led a multi-state methamphetamine trafficking scheme over the course of several years.  The government provided evidence that there were at least ten other individuals involved in the conspiracy to distribute methamphetamine, led by Mr. Sagaste-Cruz and his brother, and the jury clearly credited that testimony.  Accordingly, we are satisfied that there was no error (Booker or otherwise) in either the two-level enhancement for possession of a weapon or the four-level enhancement for his supervisory and leadership role.

Mr. Sagaste-Cruz also argues that the sentence was unreasonable under Booker.  He contends that the district court afforded the Guidelines "heavy weight" and "in light of the two enhancements," the result is unreasonable.  Aplt. Br. at 22.  We have held a properly calculated sentence that is within the Guidelines range is presumptively reasonable.  Kristl, 437 F.3d at 1054.  Here, as noted above, the district court used the Guidelines as its starting point — not mandatorily — apparently considered the factors in 18 U.S.C. § 3553(a), as it was required to do, and arrived at a sentence within the Guideline range.  As a result,

we cannot say that Mr. Sagaste-Cruz' sentence was unreasonable.

B.    Evidentiary Issues

Mr. Sagaste-Cruz next argues that the district court erred in allowing evidence concerning his prison record, street gangs, evidence of other unrelated drug activity in the area where Mr. Sagaste-Cruz was living, and evidence relating to multiple conspiracies. The government contends that all of Mr. Sagaste-Cruz' arguments were adequately and properly addressed by the district court, and as such, present no error.

As an initial matter, we note that Mr. Sagaste-Cruz failed to raise all of these arguments before the district court, and thus are reviewed only for plain error. Visinaiz, 428 F.3d at 1308. As such, Mr. Sagaste-Cruz must demonstrate that the district court committed (1) error, (2) that is plain, and (3) that the error affects his substantial rights. Id. If this showing is made, we may only exercise discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotations omitted).

Mr. Sagaste-Cruz first argues that the testimony of Ms. Kucera improperly mentioned that he had been in prison. His attorney promptly requested a cautionary instruction from the district court, and the district court gave such an instruction. We reject the notion that such an instruction was insufficient, and accordingly, we find no error on this point, plain or otherwise. Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (noting that "juries are presumed to follow

their instructions") (internal quotations omitted). Mr. Sagaste-Cruz next argues that the testimony of Ms. Hillian improperly mentioned her other drug dealing contacts, including a nation-wide street gang, the 18th Streeters. To the contrary, Ms. Hillian's testimony on these points was extremely brief, and we cannot say it amounted to reversible error. Indeed, despite Mr. Sagaste-Cruz' arguments to the contrary, our review indicates no attempt by the government to insinuate that Mr. Sagaste-Cruz was involved with these transactions, nor that the amounts of methamphetamine used to determine Mr. Sagaste-Cruz' sentence incorporated any of Ms. Hillian's dealings with the 18th Streeters. Rather, for these purposes, it is quite clear that both the trial testimony and the PSR focus on Ms. Hillian's dealings with Mr. Sagaste-Cruz in 2003, years after her dealings with the street gang. See Aplt. App. at 854-55. As such, we find no error here, plain or otherwise.

Mr. Sagaste-Cruz next argues that the district court improperly allowed evidence that exceeded the scope of the single conspiracy in the indictment. The government, for reasons quite beyond our ken, chose not to respond directly to this contention. To prove a conspiracy to traffic in methamphetamine in violation of 21 U.S.C. § 846, the government had to prove the following elements beyond a reasonable doubt: (1) an agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged

coconspirators.  United States v. Montelongo, 420 F.3d 1169, 1173 (10th Cir. 2005).  Though Mr. Sagaste-Cruz repeatedly complains that he was tried based upon the witnesses' long history of drug dealing with persons he had no connection with, the government more than sufficiently linked the defendant and the various witnesses.  It is well settled that in order to prove a conspiracy, the government can elicit testimony from the witnesses about their customers and associates.  See United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006) (noting that co-conspirator statements about historical events or individuals is offered to prove the conspiracy existed, not that the actual events existed).

Mr. Sagaste-Cruz argues that because the district court did not follow the preferred order of proof regarding co-conspirator hearsay by electing to conditionally admit that evidence subject to later connection, evidence concerning multiple conspiracies, persons, and unrelated bad acts was admitted.  Co-conspirator statements are admissible as nonhearsay under Fed. R. Evid. 801(d)(2)(E).  Before admitting such statements, the trial court must determine: (1) a conspiracy existed; (2) the evidence shows the declarant and the defendant were members of the conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy.  United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997).

The preferred order of proof requires the government to introduce evidence of the conspiracy before the admission of co-conspirator statements, but

alternatively, the district court has discretion to admit such testimony conditionally — subject to its connection by independent evidence. Id. at 1533-34. The district court chose this latter route and made its ruling after the close of the evidence, as Mr. Sagaste-Cruz did not put on any evidence. Aplt. App. at 685-86. To that end, the district court referenced its notes concerning the testimony of Patricio Pena and Kristy Kucera. Id. at 687-88. Patricio Pena testified that Julio informed him that Mr. Sagaste-Cruz would one day be taking over the business and that Mr. Sagaste-Cruz provided Mr. Pena with two ounces of methamphetamine and picked up a car in payment of a drug debt. See id. at 337, 346-347, 356-58. Kristy Kucera testified that Julio told her that Mr. Sagaste-Cruz did not care for her because as a drug user, she was bad for business. Id. at 424-25.

The testimony of the various witnesses summarized at the outset established a conspiracy to distribute methamphetamine at trial and Mr. Sagaste-Cruz's participation in it. The hearsay statements were in furtherance of the conspiracy, and as such, the district court did not abuse its discretion in admitting the hearsay evidence. The Sagaste-Cruz brothers were clearly operating to distribute methamphetamine together, and we conclude that the government more than adequately proved up the underlying conspiracy as well as its participants with ample evidence independent of the statements themselves. See Bourjaily v. United States, 483 U.S. 171, 181 (1987); see also United States v. Lopez-

- 14 -

Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996). Accordingly, we find no error here, plain or otherwise.

C.     Enhancement Information

Mr. Sagaste-Cruz also argues that the government failed to timely file and serve an enhancement information pursuant to 21 U.S.C. § 851, arguing that this would be a jurisdictional defect. The enhancement was based on Mr. Sagaste-Cruz' 1996 South Dakota felony drug possession conviction. The government disputes this argument, pointing out that the information was filed approximately three months prior to commencement of the trial. See Aplt. App. at 38-40.

As an initial matter, we recently held that timely filing and service of the information enhancement is not jurisdictional. United States v. Flowers, 441 F.3d 900, 903 (10th Cir. 2006). Mr. Sagaste-Cruz argues that he was only personally served with a Spanish-language version of the information. Unfortunately for Mr. Sagaste-Cruz, however, under § 851(a) the government may serve either the defendant or his attorney. The government clearly met the statutory requirements by serving both Mr. Sagaste-Cruz and his lawyer. See Aplt. App. at 1, 38-39.[2]

---

[2]Mr. Sagaste-Cruz also appears to argue that he was not "properly arraigned at the commencement of the jury trial." Aplt. Br. at 36. This argument is, quite frankly, confounding. Nowhere in the statutory language of § 851 resides an arraignment requirement. To the contrary, all that is required is that the district court, at some point between conviction and the entry of the sentence, must inquire of the defendant whether he affirms or denies the prior conviction. This clearly occurred here. Aplt. App. at 789.

D.    Ineffective Assistance of Counsel

Mr. Sagaste-Cruz argues that his trial counsel was ineffective, and that as the record has been sufficiently developed on this issue regarding many instances of ineffectiveness, this court should reach the merits. The government counters, arguing that an insufficient record has been established for review. We have repeatedly stated that absent extraordinary situations, we will not entertain an ineffective assistance of counsel claim on direct review. United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). We adhere to that general rule here as well, because there is simply an insufficient record to determine the merits of this contention, and we think it preferable that the district court consider the claim first. Id.

E.    Jury Selection

Mr. Sagaste-Cruz' last contention is that he was denied a fair trial by virtue of the manner in which the jury selection process was carried out. Specifically, he argues that the district court's questioning of the venire panel on the subject of methamphetamine created "bias and prejudice." Aplt. Br. at 46. Mr. Sagaste-Cruz also argues that Hispanics were under represented on the jury panel. The government, once again, summarily dismisses the merit of these arguments.

We note again that as Mr. Sagaste-Cruz raises these issues for the first time on appeal, we review for plain error. Visinaiz, 428 F.3d at 1308. With regard to the district court's questioning of the jury panel on the subject of drug use, our

- 16 -

review of the record clearly shows that these questions were asked so as to ensure that the potential jury members were not prejudiced given the subject matter of the trial, i.e., the distribution of methamphetamine. See Aplt. App. at 151 (noting that the questions regarding family members use of drugs would be "fairly touchy"); id. at 152-53 (repeatedly asking the venire members if their past experience, whether direct or indirect, would "influence [their] ability to listen to the evidence . . . and to consider both sides of [the] case?"). We reject the notion that the district court was required, sua sponte, to consider the answers in camera, or to limit the responses of the venire. As such, we conclude that Mr. Sagaste-Cruz has failed to show error, plain or otherwise.

With regard to the jury composition argument, we are unpersuaded. While Mr. Sagaste-Cruz does cite Duren v. Missouri, 439 U.S. 357 (1979), for the proposition that a jury venire with a makeup averaging less than 15% women violates the Constitution's fair-cross-section requirement, his only cognizable argument is that the actual jury panel contained "no persons with Hispanic surnames." Aplt. Br. at 49. Mr. Sagaste-Cruz fails to elaborate on this argument any further other than to point out that persons of Hispanic or Latino origin constitute 6.4% of Wyoming's population. We do not consider arguments not properly developed in the briefs. Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir. 1992); Fed. R. App. P. 28(a)(9).

In closing, we note that this case illustrates counsel's need for

conscientious and careful review of written legal materials prior to submission to this court. While Mr. Sagaste-Cruz' brief contained numerous logical leaps and specious contentions, we are dismayed by the cold reality that the government's brief was hardly better. In particular, while the government labels Mr. Sagaste-Cruz' three evidentiary arguments – including those involving the preferred order of proof and the existence of single versus multiple conspiracies – as "confusing, incoherent, and conclusory in nature," see Aplee. Br. at 29, we are sincerely troubled by the government's "effort" to rebut Mr. Sagaste-Cruz' arguments on these issues.

Indeed, counter to the demands of Fed. R. App. P. 28(b), the government addresses these three arguments in approximately one page of its brief, and dismisses all three, with nary a citation to relevant legal authority and with absolutely no argument, concluding with the summary contention that these "claims fail because he fails to show any error at all." Aplee. Br. at 29. A brief that employs summary dismissals, a severe paucity of authority, and such a blatant refusal to respond to argument not only consumes more time, but also may be somewhat less than persuasive.[3] We hope that counsel grasps this problem as

[3]We further note that while restyling the order of the appellant's arguments in an appellee's brief is sometimes useful, that brief still must fully and adequately address all of the arguments raised by the appellant. Failure to do so ignores basic rules of appellate advocacy.

well as its concomitant responsibility to correct it.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge