**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

    v.

RODNEY JOE TOWNLEY,

        Defendant-Appellant.

No. 05-8066

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 04-CR-212-01-J)**

---

Ronald G. Pretty, Cheyenne, Wyoming, for Defendant-Appellant.

Kenneth R. Marken, Special Assistant United States Attorney, (Matthew H. Mead, United States Attorney, and David A. Kubichek, Assistant United States Attorney, with him on the brief) District of Wyoming, Casper, Wyoming, for Plaintiff-Appellee.

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    Appellant Rodney Joe Townley appeals his conviction for conspiracy to possess with intent to distribute more than 500 grams of methamphetamine, 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(viii), and 846; two counts of possession with intent to distribute less than 50 grams of methamphetamine, 21 U.S.C. §§

841(a)(1), 841(b)(1)(C); and possession with intent to distribute less than 50 grams of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Appellant argues that: (1) the admission of hearsay statements violated his Sixth Amendment confrontation right under *Crawford v. Washington*, 541 U.S. 36 (2004); (2) the erroneous enhancement of his sentence was unreasonable in light of *Booker v. United States*, 543 U.S. 220 (2005); and (3) the calculation of his criminal history violated *Booker* and *Shepard v. United States*, 544 U.S. 13 (2005).

## I. BACKGROUND

On July 20, 2004, Appellant was arrested at the Days Inn in Casper, Wyoming following a report by a motel employee of suspicious activity in Appellant's room. At the time of his arrest, Appellant was found in possession of 13.05 grams of methamphetamine, 12.59 grams of cocaine, drug distribution materials including plastic bags and a digital scale, drug paraphernalia, a safe, wire transfer receipts, and $4,394 in cash. Eva Carvajal, Appellant's one-time girlfriend, was present in the motel room, and police encountered and detained two individuals, Robert Anthoney Ritchie and Rhonda Sprayberry, as they were leaving Appellant's room. Police found drugs on Mr. Ritchie and drug paraphernalia on Ms. Sprayberry.

As a result of this arrest, Appellant was charged in state court with felony possession of cocaine and methamphetamine and possession with intent to

distribute both substances. After posting a $3,000 bond, Appellant was released. Appellant failed to appear at a preliminary hearing, and a bench warrant was issued for his arrest.

Following his run-in with the police outside the Days Inn motel room, Mr. Ritchie agreed to act as a confidential informant for the Wyoming Division of Criminal Investigation ("DCI") and, in that capacity, placed two recorded telephone calls to Appellant in an effort to locate him. Those efforts proved successful, and DCI agents located Appellant at the Best Value Inn in Gillette, Wyoming. While surveilling the motel, DCI agents witnessed Appellant leave a motel room to meet with Douglas Goodsell, an associate of Appellant, to conduct a drug transaction. When agents attempted to arrest Appellant, he fled on foot but was captured after a brief pursuit.[1] The agents then returned to the motel, where they detained Harold Virden and Mary Virden as the two were leaving the same motel room and heading toward a vehicle registered to Rick Johnson, in whose name the motel room also was registered. The agents found drug paraphernalia on Mr. Virden, and they discovered a scale in Mrs. Virden's handbag that appeared to have—and was later confirmed to have—methamphetamine residue on it.

---

[1] Mr. Goodsell fled in his vehicle when the agents gave chase to Appellant. Mr. Goodsell was later located with the help of coconspirator Rick Johnson and was apprehended.

After securing a search warrant, DCI agents searched the motel room. On a nightstand police found 29.86 grams of methamphetamine contained inside a Budweiser stash can, 1.42 grams of methamphetamine contained in a plastic bag, loose methamphetamine, a glass vial containing methamphetamine residue, used plastic bags containing methamphetamine residue, a ledger, and a Social Security card and a Sheridan Community Federal Credit Union card bearing Appellant's name. Two syringes, one filled with .23 grams of liquid methamphetamine and the other empty, were found wrapped in a washcloth and tucked inside a leather jacket pocket. DCI agents also located a small quantity of marijuana inside the motel room refrigerator. DCI agents located Appellant's vehicle in the motel parking lot, and a search of that vehicle revealed a Western Union wire transfer receipt and a piece of paper containing various phone and/or social security numbers. Present in the motel room when the search was initiated were Mr. Johnson, Amy Engdahl, Ms. Engdahl's three children, and the Virdens' one child.

Appellant was charged with the four-count federal indictment outlined above. His co-defendants on the conspiracy charge included Misty Jean Kosta, Christine Dawn Herden, Mr. Goodsell, and Mr. Johnson, all of whom pleaded guilty and, with the exception of Ms. Herden, appeared as witnesses for the government against Appellant. On March 29, 2005, the district court conducted a *James* hearing to determine the extent of these witnesses' testimony. After hearing testimony from DCI Agent and chief investigator Tina Trimble, the

district court ruled from the bench that the government had established by a preponderance of the evidence that a conspiracy existed between Appellant, the various co-defendants, and various unindicted individuals including Tom Dishion, Rod Townley, Jr., and Ms. Carvajal.

On March 3, 2005, the government filed an information in accordance with 21 U.S.C. § 851 alleging that, because Appellant had previously been convicted of a felony drug offense, he would be subject to a mandatory term of twenty years' imprisonment if convicted of the conspiracy count. The § 851 information later was dismissed when a government-subpoenaed witness failed timely to appear during the sentencing phase.

At sentencing, Appellant objected to various inclusions in the pre-sentence report ("PSR"). The PSR placed Appellant in Criminal History Category VI, which the trial court lowered to Category IV of its own discretion. In addition, the trial court declined to add the leader/organizer enhancement, although it did adopt a two-level enhancement for use of a dangerous weapon during the commission of a drug crime. As a result, the district court sentenced Appellant to 240 months' imprisonment on the conspiracy charge and 120 months' imprisonment on each of the three possession with intent to distribute charges, to run concurrently.

## II. CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. art. VI. Although a district court's evidentiary rulings are reviewed for abuse of discretion, whether admission of such evidence violates the Confrontation Clause is reviewed de novo. *United States v. Summers*, 414 F.3d 1287, 1298 (10th Cir. 2005). That review is conducted according to the rule promulgated by the Supreme Court in *Crawford*, 541 U.S. 36, and defined further in *Davis v. Washington*, --- U.S. ---, 126 S. Ct. 2266 (2006).

In *Crawford*, the Supreme Court held that the admission at trial of testimonial hearsay would violate the Confrontation Clause unless the declarant testified or, where unavailable, was previously subject to cross-examination by the defendant regarding the objectionable statements. 541 U.S. at 68. The Supreme Court, however, opted not to provide a precise definition of "testimonial," *id.* ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"), concluding only, "at a minimum," that it would comprise prior testimony and statements made during police interrogation, *id.* In *Davis*, the Supreme Court restricted its clarification of the definition of "testimonial" hearsay to the police interrogation context. 126 S. Ct. at 2273. "Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial," the Supreme Court held

-6-

that statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" are nontestimonial. *Id.*

Despite the expressly limited nature of the definition provided in *Davis*, it nevertheless lends credence to this court's interpretation of "testimonial" posited in *United States v. Summers*, 414 F.3d 1287. *See United States v. Wade*, No. 05-4160, 2006 WL 3059929, at *4 (10th Cir. Oct. 30, 2006) (unpublished) ("The Court did not precisely define testimonial in *Crawford*, but it *indicated* in *Davis v. Washington* that a statement is testimonial if 'the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" (emphasis added)). In *Summers*, we held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." 414 F.3d at 1302. This holding comports with those of our sister circuits, *see United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005) ("[S]tatements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial are testimonial."); *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position

would anticipate his statement being used against the accused in investigating and prosecuting the crime."); *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) ("[T]he [*Crawford*] Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony."), and refutes Appellant's assertion that *Summers* improperly "focus[es] on the subjective motivation of the speaker as the pivotal factor in the 'testimonial' analysis." (Appellant's Br. at 20.)

Appellant reads *Crawford*'s compelling account of the abuses surrounding the right to confrontation throughout history as an argument that *Crawford* demands a "'categorical constitutional guarantee'" of live confrontation. (*Id.* at 15 (quoting *Crawford*, 541 U.S. at 67).) According to Appellant, "now that the Supreme Court has reconnected [with] its common law origins" (*id.* at 13), any reliance on the *Summers* test "cannot be reconciled with *Crawford*'s insistence on the common law as the touchstone for determining which statement requires an opportunity for confrontation" (*id.* at 20). Consequently, Appellant argues for an extreme interpretation of *Crawford* that would replace the test established by *Summers*—and our sister circuits—in favor "of asking whether confrontation would have been required at common law as it existed in 1791." (*Id.* at 20.) We refuse Appellant's confused suggestion.

Nor did *Crawford* overrule *Bourjaily v. United States*, 483 U.S. 171 (1987), as Appellant suggests. *Bourjaily* held that a court need not independently inquire

into the reliability of statements of coconspirators where Federal Rule of Evidence 801(d)(2)(E) is at play. *Id.* at 183-84. This holding is entirely consistent with *Crawford*. Indeed, the Supreme Court made clear that *Crawford* abrogated only *Ohio v. Roberts*, 448 U.S. 56 (1980), by "restoring the unavailability and cross-examination requirements," *Davis*, 126 S. Ct. at 2275 n.4, leaving longstanding interpretation of the Federal Rules of Evidence untouched. We find no merit to Appellant's unfounded and unsupported contention that *Crawford*'s instruction on testimonial hearsay somehow eviscerated Federal Rule of Evidence 801(d)(2)(E), especially since Rule 801(d)(2)(E) treats declarations by coconspirators not as an exception to the hearsay rules, but as nonhearsay.

Rule 801(d)(2)(E) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."[2] Statements by a conspirator are in furtherance of the conspiracy when they are "intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986) (quotation omitted). Such promotion occurs through "statements that explain events of importance to the conspiracy in order to facilitate its

---

[2] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

operation," *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987), "'[s]tatements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy,'" *id.* (alteration in original) (quoting *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987), and "'[s]tatements of a coconspirator identifying a fellow coconspirator'" *id.* (alteration in original) (quoting *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982)). Of course, "direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others is not hearsay." *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 871 (10th Cir. 1989).

Under Tenth Circuit law, a district court can only admit coconspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a "predicate conspiracy through trial testimony or other evidence." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). We have repeatedly mentioned, however, "our strong preference for *James* proceedings." *United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996); *Owens*, 70 F.3d at 1123. Here, the district court conducted a *James* hearing and determined by a preponderance of the evidence that (1) a conspiracy to sell methamphetamine existed; (2) numerous codefendants, unindicted coconspirators, and Appellant were members of that conspiracy; and (3) the anticipated testimony of these

coconspirators at Appellant's trial concerned statements made in furtherance of the conspiracy. (Tr. vol. 2 at 32-33); *see Owens*, 70 F.3d at 1123; *see also United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979). We note that Appellant makes no objection to the district court's findings at the *James* hearing.

Appellant does, however, cite a host of testimony that he contends violated the Confrontation Clause, including:

• two tape-recorded telephone conversations between Mr. Ritchie and Appellant in which the pair discussed drug sales and Appellant's having threatened Mr. Dishion at knifepoint;

• a tape-recorded telephone conversation between Mr. Johnson, a coconspirator then cooperating with police, and Mr. Goodsell where the men discussed the intended meeting between Mr. Goodsell and Appellant, which was prevented by Appellant's arrest;

• a tape-recorded telephone conversation between Mr. Johnson and Mr. Townley, Jr. in which the men discussed Appellant's arrest and the location of Appellant's wallet and vehicle;

• Mr. Johnson's testimony that Mr. Dishion stated the pair had to obtain money from Mr. Goodsell, meet Appellant to acquire methamphetamine with that money, and then deliver the methamphetamine to Mr. Goodsell;

• Mr. Johnson's testimony that Mr. Dishion said Appellant had instructed the two men to pick up prescription drugs from an acquaintance's apartment;

• Mr. Johnson's testimony that Mr. Dishion said Appellant had telephoned him to request that the two men wire funds to Denver;

• Mr. Johnson's testimony that Mr. Dishion stated Appellant supplied him with methamphetamine;

• Mr. Ritchie's testimony that Ms. Herden stated Appellant supplied

-11-

her with methamphetamine;

• Mr. Ritchie's unidentified statements to unspecified persons;

• Mr. Goodsell's statement that Mr. Dishion said he needed to wire money; and

• Ms. Kosta's statement that Mr. Townley, Jr. telephoned her trying to find Appellant because, according to Mr. Townley, Jr., members of a gang were holding a gun to his head until Appellant showed up to pay them for a drug delivery.[3]

The two, tape-recorded conversations between Mr. Ritchie and Appellant are, as the district court correctly noted during sidebar, admissible under Federal Rule of Evidence 801(d)(2)(A). Although Mr. Ritchie was not found to be a coconspirator in this case—indeed his name was never even mentioned at the *James* hearing—Appellant's statements in the recorded conversations are nevertheless admissible as a party admission. *See United States v. Busch*, 758 F.2d 1394, 1397 (10th Cir. 1985).

The tape-recorded conversation between Mr. Johnson and Mr. Goodsell is not problematic because both men testified at trial and, therefore, were available for cross-examination regarding their statements. Mr. Johnson's tape-recorded

---

[3] In his laundry list of *Crawford* violations, Appellant also includes DCI Agent Appley's testimony regarding statements of Mr. and Mrs. Virden and the district court's refusal to permit defense counsel to cross-examine Ms. Kosta about potential child services proceedings. The district court sustained defense counsel's objection to DCI Agent Appley's testimony, and certainly no hearsay statement can be involved where the district court refuses to allow cross-examination on relevancy grounds. As neither of these cited instances poses a *Crawford* problem, we do not address them.

conversation with Mr. Townley, Jr. is admissible as nonhearsay under Federal Rule of Evidence 801(d)(2)(E). The district court found Mr. Townley, Jr. was a coconspirator, and although these conversations took place after Appellant's arrest, the conversations reflect Mr. Townley, Jr.'s intent to continue pursuing the conspiracy's objectives. We observe that Appellant raises no argument that the conspiracy had ended, and in fact several coconspirators remained free to continue operations.

The remainder of the statements are admissible under Rule 801(d)(2)(E). Mr. Johnson, Mr. Goodsell, and Ms. Kosta were all coconspirators recounting the statements of other coconspirators. Although Mr. Ritchie was not found to be a coconspirator, he recounted statements of coconspirators. The sole purpose of the majority of these statements was to promote the conspiracy's unlawful objectives by arranging funding and transportation for the purchase and distribution of methamphetamine as well as arranging and effecting the sale of the drugs themselves. *See Reyes*, 798 F.2d at 384; *see also Smith*, 833 F.2d at 219. Some of these statements simply identified other members of the conspiracy. *See Smith*, 833 F.2d at 219; *see also United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992). Moreover, most of the statements were provided in the context of describing first-hand participation in the conspiracy and the actions of the other coconspirators. *See Mobile Materials*, 881 F.2d at 871.

Further, none of the objected-to evidence could be considered testimonial.

None of it was made at a hearing or trial or as a result of police interrogation, *Crawford*, 541 U.S. at 68, and no reasonable person in the position of these declarants would have objectively foreseen that these statements would be used in the investigation or prosecution of their conspiracy, *see Summers*, 414 F.3d at 1302.

In any case, other than Appellant's admission threatening Mr. Dishion at knifepoint and the statements identifying Appellant as the source of the methamphetamine, the statements were not testimonial because they were not offered for their truth. We have held that "[o]ne thing that is clear from *Crawford* is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement." *United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (providing detailed analysis and collecting cases). Appellant has not identified any of the statements as having been offered for their truth.

For all these reasons, Appellant's Confrontation Clause challenge fails.

## III. SENTENCE ENHANCEMENT

Appellant argues that the district court's two-level enhancement under Sentencing Guideline § 2D1.1(b)(1) for possession of a dangerous weapon violated *Booker*. According to Appellant, the court committed constitutional error when it employed judicial fact-finding under a preponderance of the

evidence standard to find that Appellant possessed a knife when he threatened Mr. Dishion's life for failing to pay for methamphetamine. In *Booker*, "the Supreme Court held that the mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment," and the Court therefore rendered the Guidelines advisory rather than mandatory. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam). The advisory Guidelines remain "a factor to be considered in imposing a sentence." *Id.* Thus, district courts "'must consult those Guidelines and take them into account when sentencing.'" *Id.* (quoting *Booker*, 543 U.S. at 264).

On appeal, while we review a defendant's ultimate sentence for reasonableness, we continue to review the district court's application of the Guidelines de novo, and we review any factual findings for clear error. *Id.* at 1054. Where the district court correctly applies the Guidelines and imposes a sentence within the applicable Guidelines range, that sentence "is entitled to a rebuttable presumption of reasonableness." *Id.* However, if the district court errs in applying the Guidelines, we must remand unless the error is harmless. *Id.* at 1055.

Appellant incorrectly argues that *Booker* error occurs any time a district court enhances a sentence based on facts not found by a jury. Rather, after *Booker*, a district court is not precluded from relying on judge-found facts in determining the applicable Guidelines range so long as the Guidelines are

considered as advisory rather than mandatory. *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005); *United States v. Lawrence*, 405 F.3d 888, 907 (10th Cir.), *cert. denied*, --- U.S. ---, 126 S. Ct. 468 (2005). We find harmless any error in the district court's application of the two-level enhancement under § 2D1.1(b)(1). That provision directs that a two-level increase be imposed "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary to this section indicates that this enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and that it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. Under § 2D1.1(b)(1), "the government has the burden of proving merely that a weapon was present in some physical proximity to the offense." *United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002). "Once the government meets this standard, it is incumbent upon the defendant to show that it is 'clearly improbable' that the weapon was connected to the offense." *United States v. Sagaste-Cruz*, 187 Fed. App'x 804, 809 (10th Cir. 2006) (unpublished) (citing *United States v. Vaziri*, 164 F.3d 556, 568 (10th Cir. 1999)). The district court relied on Appellant's recorded admission and Mr. Ritchie's corroborating trial testimony in finding that Appellant threatened Mr. Dishion at knifepoint over Mr.

Dishion's failure to pay for his methamphetamine.[4]  We find no error in the district court's factual finding that Appellant possessed a dangerous weapon in connection with the offense, and we conclude that the district court correctly calculated the Guideline range.

This conclusion is strengthened by the fact that the district court assigned a base offense level of thirty-two based on the jury's special interrogatory finding of drug quantity rather than adopting the PSR's higher base offense level determination.  Additionally, the district court decided that Appellant's criminal history was over-represented and reduced it by two levels and further determined that Appellant did not qualify for a leader/organizer enhancement.

Appellant has not rebutted the presumption of reasonableness that attaches to his correctly calculated Guidelines-range sentence.  The district court spent considerable time considering the § 3553(a) factors.  The district court conducted a careful balancing of Appellant's crimes, past military service, unfortunate resultant mental disability that led to his drug abuse, and current attitude in arriving at a sentence in the middle of the Guideline-calculated range.

Consequently, we find no error in the district court's decision to apply the

_____

[4] Given Appellant's Confrontation Clause argument, we note that a sentencing court "may consider hearsay evidence provided that the evidence has sufficient indicia of reliability," and use of such evidence, by itself, is insufficient to render a sentencing enhancement invalid. *United States v. Dazey*, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005).

two-level enhancement under § 2D1.1(b)(1), and conclude that the sentence is reasonable.

## IV. CRIMINAL HISTORY CALCULATION

Appellant received twelve criminal history points for a variety of past offenses and two criminal history points for having committed the instant offense while under a criminal justice sentence. Appellant argues that "any criminal history category other than I" violates *Booker* and *Shepard v. United States*, 544 U.S. 13 (2005). (Appellant's Br. at 25.) This court recently considered and rejected a similar argument in *United States v. Zuniga-Chavez*, 464 F.3d 1199 (10th Cir. 2006). In that case we observed that *Shepard* concerned "what evidence could be used to show that a plea of guilty to burglary defined by a nongeneric burglary statute 'necessarily admitted elements of the generic offense.'" *Id.* at 1204 (quoting *Shepard*, 544 U.S. at 26). We went on to state that *Shepard* was not controlling precedent because it "did not address what documents can be used to prove the *fact of a prior conviction*, but was concerned only with what documents can be used to prove the *facts underlying a conviction* where the elements of the state crime do not precisely mirror the federal definition." *Id.*

Appellant here urges us to adopt *Shepard*'s reasoning and require that prior offenses can be established only through charging documents, written plea

agreements, transcripts of plea colloquies, and any explicit factual findings by the trial judge to which the defendant assented. As in *Zuniga-Chavez*, we decline to so interpret *Shepard*.

"'We review the district court's factual findings . . . under the clearly erroneous standard, and review de novo the district court's legal interpretation of the Sentencing Guidelines.'" *Zuniga-Chavez*, 464 F.3d at 1203 (alteration in original) (quoting *United States v. Hawley*, 93 F.3d 682, 686-87 (10th Cir. 1996)). "Whenever a prior conviction is relevant to sentencing, the government must establish the fact of that conviction by a preponderance of the evidence." *United States v. Cooper*, 375 F.3d 1041, 1052 (10th Cir. 2004).

Here, the district court was presented with evidence derived from the National Crime Information Center ("NCIC") database and confirmed by the District of Colorado United States Probation Office. Although Appellant appears to contend that this process lacks sufficient reliability, we approved the use of NCIC-based information to prove prior offenses in *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1209-15 (10th Cir. 2006) (collecting and analyzing cases). Because Appellant fails to present any contradictory evidence tending to show that he was not convicted of the crimes used to enhance his sentence, we conclude that the government has met its burden of showing the prior convictions by a preponderance of the evidence and find no error in the district court's sentencing determination.

## V. CONCLUSION

Based on our conclusions that (1) the statements of the government's witnesses were properly admitted and presented no Confrontation Clause concern; (2) the two-level enhancement for possession of a dangerous weapon was appropriate; and (3) the criminal history score was supported by the evidence and correctly calculated, we **AFFIRM** Appellant's conviction and sentence. Accordingly, we **DENY** Appellant's motion for leave to have supplemental briefing.