**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ANTHONY TERRELL RAY
FERGUSON,

     Defendant-Appellant.

No. 11-4004
(D.C. No. 2:09-CR-00888-TC-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL** and **GORSUCH**, Circuit Judges.

---

     [*] This Order and Judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In this direct criminal appeal, Anthony Terrell Ray Ferguson, having pled guilty to conspiracy to distribute methylenedioxymethamphetamine (MDMA) in violation of 21 U.S.C. § 846, challenges his sentence on four different grounds, arguing in each that his sentence was procedurally unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## BACKGROUND

In December 2008, the Drug Enforcement Administration (DEA) launched an investigation into the present offense after a traffic stop in Nevada yielded a large amount of MDMA. The passenger in the car told authorities that the driver was a partner with Mr. Ferguson in a MDMA-trafficking scheme that involved transporting thousands of pills containing MDMA (commonly known as "ecstasy") from California to Utah. Soon thereafter, the DEA separately interviewed two confidential informants who had been arrested with MDMA and who indicated that Mr. Ferguson was the head of an organization that distributed MDMA to the Salt Lake City area after receiving shipments of the pills from Nevada, California, and Washington (state). Mr. Ferguson was arrested in Salt Lake City in November 2009 when he attempted to pick up a vehicle, registered to him, that was in the DEA's possession after highway patrolmen stopped the vehicle and found thousands of pills of MDMA.

Mr. Ferguson was charged in November 2009 with conspiracy to distribute MDMA in violation of 21 U.S.C. § 846 (Count 1); distribution of N-benzylpiperazine (BZP) in violation of 21 U.S.C. § 841(a)(1) (Count 2); and distribution of MDMA (Count

3).  He pled guilty to Count 1 in April 2010.  Mr. Ferguson's presentence investigation report (PSR) calculated that 97,148 MDMA pills were attributable to Mr. Ferguson for the purposes of computing his offense level under the Federal Sentencing Guidelines (Guidelines).   However, based on the testimony of DEA Special Agent Mark Bacon at the sentencing hearing on December 8, 2010, the district court found that approximately 110,000 to 112,000 pills were attributable to Mr. Ferguson.  The court determined Mr. Ferguson's offense level to be 37 and his criminal history category to be VI, which rendered an advisory sentencing range of 360 months to life under the Guidelines. However, the statutory maximum for Mr. Ferguson's offense was only 240 months. Ultimately, after considering the applicable sentencing factors and Mr. Ferguson's personal situation, the district court sentenced Mr. Ferguson to a term of 180 months' imprisonment.  This appeal followed.

Additional facts will be set forth below as necessary.

## DISCUSSION

### I.  Standard of review

As a general matter, we review the district court's sentencing decisions for an abuse of discretion, asking whether or not the decisions were reasonable.  Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Sayad, 589 F.3d 1110, 1116 (10th Cir. 2009).  Reasonableness in sentencing contains a procedural prong as well as a substantive prong.  United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009).  Procedural reasonableness "focuses on whether the district court committed any error in calculating

3

or explaining the sentence." Id. (citing Gall, 552 U.S. at 50). Potential procedurally unreasonable errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) [sentencing] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51.

In determining whether the district court acted reasonably, "[w]e review the district court's legal conclusions regarding the Guidelines de novo and its factual findings for clear error." United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008). Under this standard, "[w]e will not disturb a factual finding unless it has no basis in the record." United States v. Beltran, 571 F.3d 1013, 1021 (10th Cir. 2009) (quotation marks omitted). "[I]f the district court errs in applying the Guidelines, we must remand unless the error is harmless." United States v. Townley, 472 F.3d 1267, 1276 (10th Cir. 2007).

## II. The number of pills attributable to defendant

A defendant's base offense level varies depending on the volume of drugs associated with his offense of conviction. See U.S.S.G. § 2D1.1. A sentencing court's consideration of drug volume is not limited to amounts actually seized from defendants. Rather, where "the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance," id., cmt. n.12, estimating the amount of attributable drugs on sufficiently trustworthy evidence. In this case, Mr. Ferguson argues that the district court erred in finding that 110,000 to 120,000 pills of

MDMA were attributable to Mr. Ferguson for sentencing purposes. Mr. Ferguson argues that evidence upon which the court's finding was based—namely, testimony by Special Agent Bacon regarding evidence of drug quantities other than those seized directly from Mr. Ferguson—was unreliable as uncorroborated, inconsistent, and coming from non-credible alleged co-conspirators.

We review the district court's factual findings for clear error. Munoz-Nava, 524 F.3d at 1146. A sentencing judge may properly consider hearsay evidence as long as such evidence is sufficiently reliable. U.S.S.G. § 6A1.3(a) ("When any factor important to the sentencing determination is reasonably in dispute . . . the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); Townley,472 F.3d at 1276 n.4. Also, "[c]redibility determinations are within the sound discretion of the trial judge," such that this Court will not second guess the district court's findings unless they were clearly erroneous. United States v. Gobey, 12 F.3d 964, 967 (10th Cir. 1993).

At the sentencing hearing in this case, Special Agent Bacon submitted to the court that 121,793 pills were attributable to Mr. Ferguson—the sum of multiple transactions that the DEA had learned of principally through the three informants involved in Mr. Ferguson's distribution scheme. Also before the district court were the DEA's investigative reports, and transcripts of the informants' grand jury testimony and of phone calls relating to controlled purchases of MDMA from Mr. Ferguson. The court

"found the evidence as presented by Special Agent Bacon to be credible," emphasizing "the degree of independence of the various [confidential informants] whose evidence [the] special agent used to make his calculations" and finding "that there was corroboration in the telephone calls and in the fact of grand jury testimony." (ROA Vol. III at 45.)

Having reviewed the record and keeping in mind the substantial deference we give with respect to findings of fact and credibility, we cannot say that the district court clearly erred in attributing to Mr. Ferguson the amounts to which Special Agent Bacon testified. We disagree with Mr. Ferguson's assertion that the informants' information was not reliable. Rather, we agree with the district court's findings of sufficient credibility and corroboration among the informants, and we determine that the "discrepancies" noted by Mr. Ferguson in his reply brief are either non-existent (i.e., some are not inconsistent but simply more precise) or immaterial. The district court's findings were not "without factual support," and we are not "left with the definite and firm conviction" that the court erred. United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) (quotation marks omitted). We therefore discern no procedural error with the respect to the number of pills attributed to Mr. Ferguson at sentencing.

### III. The amount of MDMA per pill

Since a defendant's base offense level varies with the volume of drugs associated with his offense of conviction, the district court at an MDMA sentencing must determine the quantity of MDMA in each pill in order to calculate the total amount attributable to

the defendant. See U.S.S.G. § 2D1.1. In cases where the number of pills has been established but their weight is unknown, the Guidelines supply a rebuttable presumption that each pill contains 250 mg of MDMA. See id., cmt. n.11. Mr. Ferguson argues that the district court erred by applying the 250 mg presumption to the calculated number of pills. He asserts that one test result showed that some of the seized pills weighed only between 49.2 mg and 131 mg. Mr. Ferguson also notes that law enforcement "would have lab data" on the weight of confiscated pills. (Aplt. Br. at 23.) However, the only thing rebutting the Guidelines' 250-mg presumption was Mr. Ferguson's attorney's assertion at sentencing proceedings that lab results showed that some pills weighed between 49.2 mg and 131 mg (ROA Vol. 2 at 29); there was no actual evidence of that in the record. Mere assertions by counsel do not constitute "more reliable . . . case-specific information," U.S.S.G. § 2D1.1, cmt. n.11, that would rebut the Guidelines' presumption. Cf. United States v. Atencio, 435 F.3d 1222, 1237 (10th Cir. 2007) (approving of the jury instruction that "statements, objections, or arguments made by the lawyers are not evidence"). Thus, it was not unreasonable for the district court to apply the Guidelines' 250-mg presumption.

### IV. Conversion of MDMA to marijuana under the Guidelines

Under the Guidelines, quantities of many drugs, including MDMA, are converted into "equivalent" quantities of marijuana for the purpose of calculating a defendant's offense level. See U.S.S.G. § 2D1.1. The conversion ratio for MDMA is 1:500, such that the Guidelines consider 1 gram of MDMA to be equivalent to 500 grams of

7

marijuana for the purpose of establishing drug quantity with respect to offense levels. Id., cmt. n.10(E).[1]  Mr. Ferguson argues that the district court's application of the 1:500 ratio was unreasonable in light of empirical data suggesting that the ratio is unduly harsh and otherwise lacks justification.  However, while Mr. Ferguson is correct that a sentencing judge who disagrees with the policy or harshness of the Guidelines' advisory conversions may deviate from them without necessarily abusing his or her discretion, by no means does it follow that it is an abuse of discretion for a judge to adhere to the equivalency table, policy critiques notwithstanding.  Indeed, "a sentence is not rendered unreasonable merely because of a district court's refusal to deviate from the advisory [G]uideline range based on disagreements with the policies underlying a particular Guideline provision."  United States v. Wilken, 498 F.3d 1160, 1172 (10th Cir. 2007) (quotation marks omitted); see also United States v. Alvarez-Bernabe, 626 F.3d 1161, 1166 (10th Cir. 2010).  We therefore find no abuse of discretion in the district court's application of the Guidelines' advisory 1:500 MDMA-to-marijuana conversion ratio in this case.

## V.  Calculation of defendant's criminal history category

Finally, Mr. Ferguson challenges the district court's determination that his criminal history category was VI under the Guidelines.  More specifically, he argues that he should not receive three criminal history points for each of his two convictions for

---

[1] Under the current version of the Guidelines, the drug equivalency table is subsection D of Application Note 10 to U.S.S.G. § 2D1.1.  Mr. Ferguson was sentenced under the 2010 Guidelines.

separate armed robberies at age sixteen, reasoning that the two offenses were essentially the same crime spree. Mr. Ferguson notes that had he received a total of only three criminal history points for those two convictions, his total number of criminal history points would have twelve, rather than fifteen, and his criminal history category would have been V instead of VI.

Mr. Ferguson never raised this objection before the district court. First, in his sentencing memorandum, Mr. Ferguson argued that he was not a career offender under U.S.S.G. § 4B1.1(a) but failed to argue that his PSR had incorrectly counted his criminal history points with respect to his former convictions. (ROA Vol. I at 27-38.) Likewise, at his sentencing hearing, in the context of addressing the application of the career-offender guideline, he conceded that his criminal history category was, as the judge put it, otherwise "already" category VI. (ROA Vol. II at 13.) Mr. Ferguson thus either has waived this objection, if by his endorsement of the district court's conclusion he "intentionally relinquished or abandoned" the issue below, in which case this Court will not review it at all; or he has forfeited it, if the theory merely "wasn't raised" below, in which case it is subject to review for plain error on appeal. See United States v. Vasquez-Alcarez, 647 F.3d 973, 976 (10th Cir. 2011).

Mr. Ferguson arguably waived the issue when his counsel agreed with the sentencing judge that his criminal history category was already VI, independent of the career-offender guideline. However, assuming arguendo that the issue was only forfeited, Mr. Ferguson's objection clearly fails our plain error standard, under which he

9

must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks omitted). In this case, no plain error occurred because the district court was correct to count separately Mr. Ferguson's two robbery convictions. The Guidelines instruct that where, as with Mr. Ferguson's two robberies, there was no intervening arrest, "prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2). In this instance, Mr. Ferguson's two robbery convictions were not charged in the same instrument (they were different cases in different state courts), and the respective sentences were imposed roughly six months apart. (ROA Vol. 3 at 95-96.) Accordingly, the district court committed no error in determining Mr. Ferguson's criminal history category.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

10